Kerry K. Fennelly (SBN 232621)
kfennelly@kraw.com
Valentina S. Mindirgasova (SBN 272746)
vmindirgasova@kraw.com
Kraw Law Group, APC
1017 East Grand Avenue
Escondido, CA 92025
(760) 747-1100 tel
(760) 747-1188 fax

Attorneys for Plaintiffs,
GCIU-Employer Retirement Fund and
Board of Trustees of the
GCIU-Employer Retirement Fund

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND AND BOARD OF TRUSTEES OF THE GCIU-EMPLOYER RETIREMENT FUND,<br><br>Plaintiffs,<br><br>v.<br><br>PEAK PRINTING, INC., a Minnesota Corporation,<br><br>Defendants. | CASE NO. 2:23-cv-4712<br><br>**COMPLAINT FOR COLLECTION OF WITHDRAWAL LIABILITY PURSUANT TO ERISA §4221(b)(1) and §4219(c)(5)(B) (29 U.S.C. §1401(b)(1) and 29 U.S.C. §1399(c)(5)(B))** |

COMPLAINT

1

## COMPLAINT

Plaintiffs, GCIU-Employer Retirement Fund and Board of Trustees of the GCIU-Employer Retirement Fund, for causes of action against Defendant Peak Printing, Inc., allege as follows:

## JURISDICTION AND VENUE

1. This is an action for collection of withdrawal liability, which arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1001 *et seq*.

2. This court has jurisdiction over this action under 28 U.S.C. §1331, ERISA Sections 502(e), 502(f), and 4301(c), 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c).

3. Venue lies in this Court under ERISA Sections 502(e)(2) and 4301(d), 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the GCIU-Employer Retirement Fund ("Fund") is administered in Los Angeles County, California.

## PARTIES

4. Plaintiff Fund is a multiemployer pension plan within the meaning of ERISA Sections 3(37) and 4001(a)(3), 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5. Plaintiff Board of Trustees of the GCIU-Employer Retirement Fund ("Board of Trustees") is comprised of the present trustees who are the named fiduciaries of the Fund within the meaning of ERISA Section 402(a), 29 U.S.C. §1102(a), and is the plan sponsor of the Fund within the meaning of ERISA Sections 3(16)(B)(iii) and 4001(a)(10), 29 U.S.C. §§ 1002(16)(B)(iii) and 1301(a)(10). The Board of Trustees administers the Fund in Los Angeles County, California.

6. Pursuant to ERISA Sections 502(a)(3) and 4301(a)(1), 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Board of Trustees is authorized, as a named fiduciary, to bring this action on behalf of the Fund, its participants and beneficiaries for the purpose of collecting withdrawal liability. The Fund is also authorized to bring this action in its own name pursuant to a provision contained within Article VIII, Section 18 of the Plaintiff Fund's Trust Agreement, which permits all legal actions to be prosecuted in the name of

the Fund. A true and correct copy of the Fund's Trust Agreement is attached hereto as Exhibit 1.

7. Defendant Peak Printing, Inc. ("Peak Printing") is presently an administratively dissolved corporation that was organized under the laws of the state of Minnesota.

## FACTUAL ALLEGATIONS

8. In or about 2010, Allen Printing, Inc. ("Allen Printing") was incorporated in the state of Minnesota by Anthony Schlosser and Debra Schmidt (also known as, Kay Debra Schlosser).

9. Plaintiffs are informed and believe, and thereon allege that Allen Printing was a commercial printing business and is now dissolved.

10. Plaintiffs are informed and believe, and thereon allege that Debra Schmidt was the sole shareholder of Allen Printing from the time that it was incorporated until its dissolution. However, she was not at all involved in any of Allen Printing's operations.

11. Plaintiffs are informed and believe, and thereon allege that Anthony Schlosser and Debra Schmidt were legally married sometime after Allen Printing's incorporation, but prior to its dissolution.

12. Anthony Schlosser served as Allen Printing's CEO and was also an employee of Allen Printing.

13. Plaintiffs are informed and believe, and thereon allege that since its incorporation and until its closure on or about December 31, 2016, Anthony Schlosser ran all of Allen Printing's operations, including all managerial tasks, bookkeeping, and performing the actual printing work. Additionally, Anthony Schlosser was the only person with access to Allen Printing's bank account.

14. Plaintiffs are informed and believe, and thereon allege that Defendant Peak Printing was a client of Allen Printing because Allen Printing prepared bindery orders for Peak Printing.

15. On or about July 1, 2016, Anthony Schlosser and his brother, Andrew Schlosser, who at the time was a Peak Printing employee, purchased Peak Printing in a stock sale.

16.  After the purchase of Peak Printing, Mr. Anthony Schlosser ran the operations at both Allen Printing and Peak Printing.

17.  For all times relevant to this lawsuit, including in 2016, Allen Printing was bound to a collective bargaining agreement with the GCC/IBT Local 1-M under which Allen Printing was required to make contributions to the Plaintiff Fund on behalf of its employees who were performing bargaining unit work under the collective bargaining agreement.  A true and correct copy of the collective bargaining agreement is attached hereto as Exhibit 2.

18.  Peak Printing was not a signatory to a collective bargaining agreement with the GCC/IBT Local 1-M or any other collective bargaining agreements. Thus, Peak Printing was not a union print shop because its shareholders, Anthony and Andrew Schlosser agreed that it would not be a union shop.

19.  Anthony Schlosser informed Plaintiffs that Allen Printing permanently closed as of January 1, 2017.

20.  Prior to its closures, and for all times relevant to this lawsuit, Allen Printing was an "employer" as the term is defined by ERISA Section 3(5), 29 U.S.C. § 1002(5), and was engaged in an industry affecting commerce, as defined by section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a).

21.  Since as of January 1, 2017, Allen Printing was no longer operating, its obligation to contribute to the Plaintiff Fund pursuant to the collective bargaining agreement with GCC/IBT Local 1-M ceased, and as a result it completely withdrew from the Plaintiff Fund within the meaning of ERISA Section 4201 *et seq.*, 29 U.S.C. §1381 *et seq.*

22.  Plaintiffs determined that Allen Printing effectuated a complete withdrawal as defined by ERISA Section 4203 of ERISA, 29 U.S.C. §1383, and provided it with a Notice of 2017 Complete Withdrawal Liability and Demand for Payment ("Notice and Demand"), dated December 6, 2018, pursuant to Section 4219(b)(1) of ERISA, 29 U.S.C. §1399(b)(1).

23. The Notice and Demand included a schedule of payments, a detailed calculation of how the amount of the withdrawal liability assessment was calculated by the actuary, and was made in accordance with ERISA and the Fund's Withdrawal Liability Procedures. A true and correct copy of the Notice and Demand with the detailed calculations is attached hereto as Exhibit 3.

24. Allen Printing did not challenge the withdrawal liability assessment pursuant to ERISA Section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1), and the time for it to do so has expired.

25. Allen Printing did not make its withdrawal liability payments pursuant to the schedule, and as a result on February 25, 2019, Plaintiffs provided via certified mail a Notice of Failure to Pay Withdrawal Liability and Demand for Cure to Allen Printing, in accordance with ERISA Section 4219(c)(5), 29 U.S.C. § 1399(c)(5). A true and correct copy of the Demand for Cure is attached hereto as Exhibit 4.

26. Allen Printing failed to cure the required withdrawal liability payments to the Fund and became in default within the meaning of ERISA Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5).

27. On October 2, 2019, Plaintiffs filed suit in this Court against Allen Printing. See *GCIU Employer Retirement Fund et al. v. Allen Printing, Inc.*, Case No: 2:19-cv-08505-GW-KESx.

28. On March 24, 2020, this Court entered a default judgment against Allen Printing for the full amount ($722,679) of the withdrawal liability, plus interest, attorneys' fees and costs. A copy of the Default Judgment is attached hereto as Exhibit 5.

29. To date, Plaintiffs have been unable to recover any portion of the default judgment from Allen Printing, thus the entirety of the withdrawal liability remains due and owing.

30. Plaintiffs are informed and believe, and thereon allege that the commercial printing business operations of Allen Printing and Peak Printing were ran in tandem with the intent to avoid collective bargaining and pension obligations, including withdrawal

liability, therefore Defendant Peak Printing is the alter ego of Allen Printing, and is thus jointly and severally liable for Allen Printing's withdrawal liability.

31. Plaintiffs are informed and believe, and thereon allege that Defendant Peak Printing acquired Allen Printing Inc.'s commercial printing business, through an asset transfer, and is thus jointly and severally liable for Allen Printing, Inc.'s withdrawal liability under the doctrine of successor liability.

## FIRST CLAIM FOR RELIEF

(*Alter Ego Obligation for Withdrawal Liability*)

32. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 31 of this Complaint as though fully set forth herein.

33. Allen Printing and Peak Printing were both businesses that engaged in commercial printing.

34. Even though Allen Printing was owned by Anthony Schlosser's wife, Debra Schmidt, and Peak Printing was owned by Anthony Schlosser and his brother, Andrew Schlosser, Anthony Schlosser simultaneously operated and managed both Allen Printing and Peak Printing.

35. While Allen Printing was a signatory to a collective bargaining agreement requiring it to make contributions to Plaintiff Fund, Peak Printing was not a signatory to any collective bargaining agreements.

36. During the time that Anthony Schlosser operated both businesses, he was Allen Printing's only employee covered by the collective bargaining agreement with GCC/IBT Local 1-M and as a result received contributions based on the covered work that he performed at Allen Printing.

37. Plaintiffs are informed and believe, and thereon allege that the same type of work covered by the collective bargaining agreement with GCC/IBT Local 1-M was also performed by Anthony Schlosser and Andrew Schlosser at Peak Printing while Allen Printing was still operating.

38. Upon information and belief, based on Anthony Schlosser's roles and work performed at both Allen Printing and Peak Printing, both entities were run in tandem with the intention of avoiding Allen Printing's collective bargaining and pension obligations, including withdrawal liability. Therefore, Defendant Peak Printing is Allen Printing's alter ego.

## SECOND CLAIM FOR RELIEF

*(Successor Employer Obligation for Withdrawal Liability)*

39. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 38 of this Complaint as though fully set forth herein.

40. Plaintiffs are informed and believe, and thereon allege that there was substantial continuity of Allen Printing's printing business by Defendant Peak Printing.

41. Plaintiffs are informed and believe, and thereon allege, that Defendant Peak Printing took over Allen Printing's business operations and substantially continued its business operations by incorporating it into its own existing operation. For example, Allen Printing performed bindery work for Peak Printing but since the takeover Peak Printing could do it in-house.

42. Defendant Peak Printing hired all of Allen Printing's employees and managerial staff because Allen Printing only had one employee, Anthony Schlosser, who performed all managerial tasks, bookkeeping tasks, and all printing work covered under the collective bargaining agreement.

43. Defendant Peak Printing continued to provide the same services to customers as Allen Printing.

44. At the time of its closure, Allen Printing's equipment consisted of a printing press and a collator that it used in its day-to-day printing work. This equipment was transferred to Peak Printing, and Peak Printing continued to use it in its day-to-day printing work.

45. Defendant Peak Printing also received Allen Printing's customer list and thus was able to retain Allen Printing's customers and to continue to provide the same services as Allen Printing.

COMPLAINT

46. Plaintiffs are informed and believe, and thereon allege that Defendant Peak Printing had actual and constructive notice of Allen Printing's impending withdrawal liability prior to or at the time that it continued the operation of Allen Printing's printing business.

47. Since Defendant Peak Printing continued the business operations of Allen Printing it became its successor, thus becoming jointly and severally liable for its withdrawal liability under the doctrine of successor liability.

48. Defendant Peak Printing as the successor of Allen Printing is thus jointly and severally liable for its withdrawal liability in the sum of $722,679, plus interest, attorneys' fees, and costs.

WHEREFORE, Plaintiffs request the following relief on all claims:

(i) the unpaid withdrawal liability payment of $722,679;

(ii) interest in accordance with the prevailing market rate pursuant to § 4219(c)(6) of ERISA, 29 U.S.C. § 1399(c)(6), on the total amount of unpaid withdrawal liability due and owing from February 4, 2019 until paid;

(iii) Plaintiffs' reasonable attorneys' fees and costs of the action incurred herein in accordance with the Trust Agreement and ERISA Sections 502(g)(2)(D) and 4301(e), 29 U.S.C. §§ 1132(g)(2)(D) and 1451(e); and

(iv) Such other legal and equitable relief as the Court deems appropriate.

///
///
///
///
///
///
///

| | |
|---|---|
| Dated: June 15, 2023 | /s/ Valentina S. Mindirgasova |
| | Kerry K. Fennelly |
| | Valentina S. Mindirgasova |
| | Kraw Law Group, APC |
| | 1017 East Grand Avenue |
| | Escondido, CA 92025 |
| | (760) 747-1100 |
| | (760) 747-1188 |
| | kfennelly@kraw.com |
| | vmindirgasova@kraw.com |
| | |
| | Attorneys for Plaintiffs |

COMPLAINT