# EXHIBIT 1

GCIU-Employer Retirement
Fund et. al. v. Peak Printing, Inc.

Exhibit 1 to Complaint

Page 10



# GCIU-EMPLOYER RETIREMENT FUND

## Trust Agreement

**Effective January 1, 1976**

**As Revised and Restated December 1, 2012**

# TABLE OF CONTENTS

PREAMBLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

ARTICLE I — DECLARATION OF TRUST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    1. Name . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    2. Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    3. Nature of Trust Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    4. Duration of Trust Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    5. Term of Trust Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ARTICLE II — DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

ARTICLE III — THE TRUSTEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    1. The Board of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    2. Statutory Capacities of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    3. Agents for Service of Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    4. Number of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    5. Alternate Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    6. Identity of Present Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

    7. Appointment of Successor Employer Trustees . . . . . . . . . . . . . . . . . . . . . . . 6

    8. Appointment of Successor Labor Organization Trustees . . . . . . . . . . . . . . . 6

    9. Individuals Disqualified from Serving as Trustees . . . . . . . . . . . . . . . . . . . . .6

    10. Acceptance of Appointment by Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    11. Term of Appointment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

    12. Termination of Appointment by Appointing Entity . . . . . . . . . . . . . . . . . . . 6

    13. Termination of Appointment for Failure to Attend Meetings . . . . . . . . . . . 7

    14. Termination of Appointment for Conviction of a Crime . . . . . . . . . . . . . . .7

    15. Termination of Appointment for Mental Incapacity . . . . . . . . . . . . . . . . . .7

    16. Resignation of Appointment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

    17. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

    18. Return of Books and Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

— A —

Exhibit 1 to Complaint

GCIU-Employer Retirement Fund et. al. v. Peak Printing, Inc.

Page 13

ARTICLE IV — TRUST FUND ADMINISTRATION ..........................8

    1. Manner of Voting ................................................8

    2. Constitution of a Quorum .......................................8

    3. Proxies Prohibited .............................................8

    4. Regular Meetings ..............................................8

    5. Special Meetings ..............................................8

    6. Action without a Formal Meeting ...............................8

    7. Failure of the Trustees to Agree—Arbitration ..................8

    8. Election of Officers ..........................................9

    9. Duties of Officers ............................................9

    10. Authorized Signatures ........................................9

    11. Compensation and Expenses ...................................10

    12. Benefits to Trustees Not Prohibited .........................10

ARTICLE V — PARTICIPATION .........................................11

    1. Bargaining Unit Employees Entitled to Participate ............11

    2. Labor Organization Employees .................................11

    3. Non-Bargaining Unit Employees of Participating Employers .....11

    4. Transferred Employees ........................................12

    5. Trust Fund Employees .........................................12

    6. Unauthorized Participation ...................................12

    7. Sole Proprietors and Partners Ineligible ....................12

    8. Participation of Non-Bargaining Unit Employees ...............12

ARTICLE VI — TRUSTEE RESPONSIBILITIES .............................13

    1. General Duty - Receipt of Contributions and Administration of the Retirement Benefit Plan ...............................................13

    2. Compliance with the Internal Revenue Code ....................13

    3. Funding Standards ............................................13

    4. Basis of Payments to and from Trust Fund .....................13

    5. Application of Trust Fund Assets .............................14

    6. Fiduciary Standards ..........................................14

— B —

7. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

8. Investments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

9. Specifically Permitted Investments . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

10. Title to Investments and Other Assets . . . . . . . . . . . . . . . . . . . . . . . . . 15

11. Fidelity Bond . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

12. Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

13. Annual Audit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

14. Annual Actuarial Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

15. Plan Description . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

16. Annual Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

17. Statements of Accrued Pension Benefits . . . . . . . . . . . . . . . . . . . . . . . . 16

18. Pension Funding Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

19. Income Tax Withholding and Reporting . . . . . . . . . . . . . . . . . . . . . . . . .17

20. Documents to be Examined or Furnished . . . . . . . . . . . . . . . . . . . . . . . .17

21. Procedure for Establishing Funding Policy . . . . . . . . . . . . . . . . . . . . . . .18

22. Payments to Pension Benefit Guaranty Corporation . . . . . . . . . . . . . . . . .18

23. Benefit Claim and Review Procedures . . . . . . . . . . . . . . . . . . . . . . . . . .18

ARTICLE VII — ALLOCATION OR DELEGATION OF TRUSTEE
              RESPONSIBILITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

1. Allocation of Responsibilities to Committees . . . . . . . . . . . . . . . . . . . . . . 19

2. Delegation of Investment Responsibilities . . . . . . . . . . . . . . . . . . . . . . . 19

3. Delegation of Other Responsibilities . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

4. Review of Performance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

ARTICLE VIII - TRUSTEE POWERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

1. General Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

2. Specific Powers Discretionary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

3. Benefit Plan Being Administered . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

4. Amendments to the Benefit Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

5. Means of Providing Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

6. Facility of Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

— C —

7. Administrative Manager . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

8. Banking Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

9. Other Professional and Non-Professional Persons . . . . . . . . . . . . . . . . . . 22

10. Obtaining of Necessary Premises, Equipment, and Supplies . . . . . . . . . . 22

11. Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

12. Borrowing Money . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

13. Reserve Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

14. Payment of Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

15. Refunds of Contributions Erroneously Paid . . . . . . . . . . . . . . . . . . . . . . 23

16. Penalties for False or Withheld Information . . . . . . . . . . . . . . . . . . . . . . 23

17. Correction of Errors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

18. Prosecution of Legal Actions or Claims . . . . . . . . . . . . . . . . . . . . . . . . . 24

19. Defense of Legal Actions or Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

20. Compromise of Legal Actions or Claims . . . . . . . . . . . . . . . . . . . . . . . . 24

21. Subscription and Participation Agreements . . . . . . . . . . . . . . . . . . . . . . 24

22. Participation in Non-Profit Educational Organizations . . . . . . . . . . . . . . 24

23. Reciprocity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

24. Mergers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

25. Eligible Rollover Plan Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

26. Interpretation and Application of Documents . . . . . . . . . . . . . . . . . . . . . 25

27. Adoption and Implementation of a Funding Improvement Plan and
Rehabilitation Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

ARTICLE IX — CONTRIBUTIONS AND COLLECTIONS . . . . . . . . . . . . . . . . . . . 27

1. Contribution Reporting Forms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

2. Contributions Due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

3. Contribution Due Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

4. Delinquent Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

5. Audit of Employer Books and Records . . . . . . . . . . . . . . . . . . . . . . . . . . 27

6. Liquidated Damages, Attorneys Fees, Interest, and Other Charges . . . . . . 28

7. Additional Liquidated Damages in Event of Court Judgement . . . . . . . . . 28

— D —

GCIU-Employer Retirement
Fund et. al. v. Peak Printing, Inc.

Exhibit 1 to Complaint

Page 16

8. Waiver of Charges ............................................28

9. Protection of Employees in Cases of Delinquency ...................28

10. Coordination with Provisions in Collective Bargaining Agreements .....29

ARTICLE X — EMPLOYER WITHDRAWAL LIABILITY ...................30

1. Calculation and Collection of Employer Withdrawal Liability ..........30

2. Determination of Amount of Unfunded Vested Benefits Allocable
   to Withdrawing Employer .......................................30

3. Payment of Withdrawal Liability in Monthly Installments .............30

4. Adoption of Administrative Rules and Regulations ...................30

5. Notice of Potential Withdrawal Liability ...........................30

ARTICLE XI — BENEFIT CLAIM, HEARING AND ARBITRATION
              PROCEDURES ........................................32

1. Hearings Required .............................................32

2. Requests for Hearings ..........................................32

3. Conduct of Hearings ...........................................32

4. Hearing Rules ................................................32

5. Arbitration - Mandatory ........................................32

6. Benefit Claim and Review Procedures for a Participating Employee or
   Beneficiary ..................................................33

7. Sole and Exclusive Remedies ....................................33

ARTICLE XII — LIMITATIONS .....................................34

1. Liabilities and Debts of Trust Fund ...............................34

2. Liabilities and Debts of Participating Parties .......................34

3. Personal Liabilities of Trustees and Fiduciaries ....................34

4. Judgments against Trust Fund ...................................34

5. Participating Parties' Rights ....................................34

6. Cessation of Participation ......................................35

7. Protection of Trust Fund, Contributions, and Benefits ...............35

8. Reliance upon Written Documents ...............................35

9. Agents of Trust Fund ..........................................35

— E —

ARTICLE XIII —MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    1. Trust Fund Offices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    2. Applicable Laws and Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

    3. Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    4. Severability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    5. Title—Words . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    6. Information to be Furnished and Distributed . . . . . . . . . . . . . . . . . . . . . . . . 36

ARTICLE XIV—AMENDMENTS AND TERMINATION . . . . . . . . . . . . . . . . . . . .37

    1. Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

    2. Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

    3. Allocation upon Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

SIGNATORY PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

— F —

# PREAMBLE

WHEREAS, the signatory parties (or their predecessors in interest) did previously execute a "Retirement Benefit Plan", with an effective date of October 1, 1955, which document created and governed a joint labor-management employee pension benefit fund presently known as the

**GCIU — Employer
Retirement Fund
and**

WHEREAS, said document did also create an employee pension benefit plan presently known as the

**GCIU — Employer
Retirement Benefit Plan
and**

WHEREAS, said document was subsequently amended in several respects, and

WHEREAS, said document was adopted in accordance with the applicable provisions of Section 302(c) of the Labor Management Relations Act of 1947 and applicable provisions of the Internal Revenue Code, and

WHEREAS, the enactment of the Employee Retirement Income Security Act of 1974 mandated the adoption of certain substantive changes in the documents governing employee pension benefit funds and thus required amendment of the existing document, and

WHEREAS, the Trustees have again determined to revise and restate the existing Trust Agreement so as to further take into account contemporary needs and conditions, including amendments which have been made since the September 1, 1999 revision,

NOW THEREFORE, the Trustees and remaining signatory parties do hereby revise and restate the "Trust Agreement", as follows:

GCIU-Employer Retirement        Exhibit 1 to Complaint        Page 19
Fund et. al. v. Peak Printing, Inc.

# ARTICLE I
# DECLARATION OF TRUST

1.   *Name*

The Trustees and the remaining signatory parties hereby reaffirm the declaration and establishment of a Trust Fund known as the

**GCIU — Employer**
**Retirement Fund**

The Trustees may hold property, enter into contracts, and in all matters act on behalf of the Trust Fund in such name. The Trust Fund may sue or be sued in such name.

2.   *Purpose*

The purpose of the Trust Fund is to provide an entity to which contributions from participating employers can be paid and through which the Trustees can administer the GCIU—Employer Retirement Benefit Plan for the benefit of the participating employees for whom such contributions have been paid, and their beneficiaries.

3.   *Nature of Trust Fund*

The Trust Fund is a "trust" as contemplated by Section 302(c)(5) of the Labor Management Relations Act of 1947; a "trust" as contemplated by Section 401(a) of the Internal Revenue Code; and a "trust" as contemplated by Section 403(a) of the Employee Retirement Income Security Act of 1974. It is an entity separate and apart from the participating employers, employer associations, and labor organizations.

4.   *Duration of Trust Fund*

The Trust Fund shall continue in existence on an indefinite basis, contemporaneously with the term of this Trust Agreement.

5.   *Term of Trust Agreement*

This revised and restated Trust Agreement shall be effective as of December 1, 2012, and shall continue indefinitely until such time as it may be terminated in accordance with the provisions of Article XIV hereof.

GCIU-Employer Retirement   Exhibit 1 to Complaint                    Page 20
Fund et. al. v. Peak Printing, Inc.

# ARTICLE II
# DEFINITIONS

The following definitions shall govern in this Trust Agreement:

1. "Beneficiary"—any person designated by a participating employee, under the terms of the Retirement Benefit Plan, to receive benefits, if any, upon the death of such participating employee.

2. "Collective bargaining agreement"—a written agreement between a participating employer and a participating labor organization, providing generally for wages, hours, and working conditions, by the terms of which the employer is obligated to make contributions to the Trust Fund on behalf of the bargaining unit employees covered by such an agreement.

3. "Contributions"—the payments which a participating employer is obligated to make to the Trust Fund pursuant to the terms of a collective bargaining agreement, subscription agreement, or participation agreement.

4. "Participating employee"—an individual employed by a participating employer and for whom that employer makes contributions to the Trust Fund, as allowed by the provisions of Article V, Sections 1, 2, 3, 4, and 5 and any individual who formerly was so employed and who has achieved vested or retired status under the terms of the Retirement Benefit Plan.

5. "Participating employer"—any employing entity that is party to a collective bargaining agreement or subscription agreement with a participating labor organization, as allowed by the provisions of Article V, Section 1 hereof. An employing entity may be a sole proprietorship, partnership, unincorporated association, corporation, or joint venture; or the United States of America; or any state, county or municipality; or other public agency, public corporation, or governmental unit.

A participating labor organization, or the Trust Fund, or any related trust fund, shall also be considered as a "participating employer" for the limited purpose of allowing the employees of such entities to participate in the Trust Fund, as permitted by Article V, Sections 2 and 5 hereof.

6. "Participating employer association"—any employer association or multi-employer bargaining group that is party to a collective bargaining agreement with a participating labor organization, as allowed by the provisions of Article V, Section 1 hereof.

7. "Participating labor organization"—Graphic Communications Conference of the International Brotherhood of Teamsters, and any local union, district council, joint district council, conference, or other bargaining agency affiliated with or represented by the Conference, that has entered into a collective bargaining agreement or subscription agreement with a participating employer or employer association, as allowed by the provisions of Article V, Section 1 hereof.

8. "Participation agreement"—a written agreement, in a form approved by the Trustees, by the terms of which a participating employer is obligated to make contributions to the Trust Fund on behalf of the non-bargaining unit employees covered by such an agreement.

9. "Pension benefits" or "employee pension benefits"—the pension and related benefits provided in the Retirement Benefit Plan.

GCIU-Employer Retirement Fund et. al. v. Peak Printing, Inc.      Exhibit 1 to Complaint      Page 21

10. "Related trust fund"—an employee benefit trust fund, other than this Trust Fund, to which participating employers make contributions as required by collective bargaining agreements with participating labor organizations.

11.   "Retirement Benefit Plan"—The GCIU—Employer Retirement Benefit Plan as constituted on the effective date of this Trust Agreement and as hereafter amended.

12.   "Signatory parties"—the parties who have created this Trust Agreement and whose identities and signatures appear on the last page hereof and their successors. (See Note on page 40)

13.   "Subscription agreement"—a written agreement, in a form approved by the Trustees, by the terms of which a participating employer and participating labor organization subscribe to the terms and provisions of this Trust Agreement, and by the terms of which an employer is obligated to make contributions to the Trust Fund on behalf of the bargaining unit employees covered by such an agreement.

14.   "Trustees" or "Board of Trustees"—the Trustees of the Trust Fund and their successors.

15.   "Trust" or "Trust Fund"—the entity created by this Trust Agreement and all property and money held by such entity, including all contract rights and records.

GCIU-Employer Retirement      Exhibit 1 to Complaint                Page 22
Fund et. al. v. Peak Printing, Inc.

# ARTICLE III
# THE TRUSTEES

1.  *The Board of Trustees*

The Trust Fund and the Retirement Benefit Plan shall be controlled and administered by a Board of Trustees composed of Employer Trustees and Labor Organization Trustees.

2.  *Statutory Capacities of Trustees*

For purposes of complying with Section 302(c)(5)(B) of the Labor Management Relations Act of 1947, the participating employers shall be represented, in the administration of the Trust Fund, by the Employer Trustees; and the participating employees shall be represented by the Labor Organization Trustees.

For purposes of complying with the various provisions of the Employee Retirement Income Security Act of 1974 the Trustees shall be considered as "named fiduciaries", "fiduciaries", the "plan administrator", and the "plan sponsor", as those terms are used in the Act.

3.  *Agents for Service of Process*

The Trustees shall also be considered as agents of the Trust Fund for the purpose of accepting service of legal process, provided that the Trustees may designate their administrative manager, or another person, as agent of the Trust Fund for this purpose.

4.  *Number of Trustees*

There may be up to eighteen (18) Trustees, nine (9) of whom shall be Employer Trustees and nine (9) of whom shall be Labor Organization Trustees.

5.  *Alternate Trustees*

There may also be up to ten (10) alternate Trustees, five (5) of whom shall be alternate Employer Trustees and five (5) of whom shall be alternate Labor Organization Trustees.

In the event any Employer Trustee is absent from any meeting of the Trustees he may designate an alternate Employer Trustee to serve in his place and stead. If the absent Employer Trustee fails to make such a designation, the Employer Trustees who are present at the meeting may designate an alternate Employer Trustee to serve in the place and stead of the absent Trustee.

In the event any Labor Organization Trustee is absent from any meeting he may designate an alternate Labor Organization Trustee to serve in his place and stead. If the absent Labor Organization Trustee fails to make such a designation, the Labor Organization Trustees who are present at the meeting may designate an alternate Labor Organization Trustee to serve in the place and stead of the absent Trustee.

The alternate Trustees, if any, shall be appointed in the same manner and retain such appointment under the same conditions as the regular Trustees. When designated to serve for a regular Trustee, and while serving, an alternate Trustee shall have all of the powers and responsibilities of a regular Trustee.

GCIU-Employer Retirement   Exhibit 1 to Complaint                Page 23
Fund et. al. v. Peak Printing, Inc.

6.   *Identity of Present Trustees*

The regular and alternate Trustees serving as of the revised date of this Trust Agreement are:

| Employer Trustees | Labor Organization Trustees |
|---|---|
| Hugh Gaylord | Edward A. Treacy |
| Jim Janiga | Stephen E. Northup |
| Joseph Conley | John D. Bachler |
| Thomas E. Phillips | George Tedeschi |
| Tom Sarnecki | |
| | *Alternate Labor Organization Trustees* |
| | Ralph Meers |

7.   *Appointment of Successor Employer Trustees*

In the event of the termination of appointment, resignation, or death of an Employer Trustee, a successor Employer Trustee shall be appointed by unanimous action of the remaining Employer Trustees.

8.   *Appointment of Successor Labor Organization Trustees*

In the event of the termination of appointment, resignation, or death of a Labor Organization Trustee, a successor Labor Organization Trustee shall be appointed by unanimous action of all of the signatory labor organizations. If any signatory labor organization fails, within sixty (60) days, to respond to a suggested appointment made by the other signatory labor organizations, that signatory labor organization will be deemed to have waived its rights to participate in or to contest the appointment.

9.   *Individuals Disqualified from Service as Trustees*

No individual who has been convicted of any of the crimes listed in Section 411(a) of the Employee Retirement Income Security Act of 1974 shall serve as a Trustee during the period of disqualification specified in the statute.

10.   *Acceptance of Appointment by Trustees*

Each Trustee shall sign a document accepting his appointment as Trustee and agreeing to abide by the terms and provisions of this Trust Agreement.

11.   *Term of Appointment*

Each Trustee shall serve until termination of appointment, resignation, or death.

12.   *Termination of Appointment by Appointing Entity*

The appointment of an Employer Trustee may be terminated, at any time, by unanimous action of the remaining Employer Trustees.

The appointment of a Labor Organization Trustee may be terminated, at any time, by unanimous action of all of the signatory labor organizations.

The termination of a Trustee's appointment shall be effective upon the termination date specified in a written notice of termination, executed by the group of appropriate Employer Trustees or signatory labor organizations. Any such notice shall be addressed to

GCIU-Employer Retirement Fund et. al. v. Peak Printing, Inc.

Exhibit 1 to Complaint

the Trustees and shall be mailed to the Trust Fund's administrative office.

13.  *Termination of Appointment for Failure to Attend Meetings*

The appointment of a Trustee shall be automatically terminated if such Trustee fails to attend three *(3)* consecutive meetings of the Trustees, without being excused from attendance by specific action of the remaining Trustees noted in the minutes. Alternate Trustees are exempt from this requirement.

14.  *Termination of Appointment for Conviction of a Crime*

The appointment of a Trustee shall be automatically terminated if such Trustee is convicted of any of the crimes listed in Section 411(a) of the Employee Retirement Income Security Act of 1974. If a Trustee who is so disqualified should continue to serve as a Trustee, in circumstances where the remaining Trustees have no knowledge of his disqualification, such service shall not invalidate any of the actions or decisions of the Trustees during the period of such service.

15.  *Termination of Appointment for Mental Incapacity*

The appointment of a Trustee shall be automatically terminated if such Trustee is declared mentally incompetent by court decree.

16.  *Resignation of Appointment*

A Trustee may resign his appointment at any time. Such resignation shall be effective upon the resignation date specified in a written notice of resignation. Any such notice shall be addressed to the Trustees and shall be mailed to the Trust Fund's administrative office.

17.  *Vacancies*

No vacancy in the position of Trustee shall impair the power of the remaining Trustees to administer the affairs of the Trust Fund so long as a quorum exists as specified in Article IV, Section 2 hereof.

18.  *Return of Books and Records*

In the event of the termination of appointment, resignation, or death of a Trustee, the Trustee (or his legal guardian, heirs, or personal representative) shall, upon the request of the Chairman or the Secretary or of the administrative manager, forthwith turn over to the administrative manager, any and all records, books, documents, monies, and other property in the possession of the Trustee, or under his control, that belong to the Trust Fund or that were received by him in his capacity as Trustee.

— 7 —

GCIU-Employer Retirement      Exhibit 1 to Complaint                    Page 25
Fund et. al. v. Peak Printing, Inc.

# ARTICLE IV
# TRUST FUND ADMINISTRATION

1.  *Manner of Voting*

Any action to be taken by the Trustees shall require a favorable vote by the Employer Trustees and by the Labor Organization Trustees, according to the unit method of voting. The Employer Trustees shall have but one vote among them (which shall be determined by a majority of the Employer Trustees present) and the Labor Organization Trustees shall have but one vote among them (which shall be determined by a majority of the Labor Organization Trustees present).

Any Trustee including the Chairman or Secretary may offer or second any motion or resolution for the Trustees' consideration. Any individual Trustee shall be entitled, upon request, to have his vote recorded in the official minutes.

2.  *Constitution of a Quorum*

To constitute a quorum at any meeting of the Trustees there must be present at least three (3) Employer Trustees, or duly designated alternates, and three (3) Labor Organization Trustees, or duly designated alternates.

3.  *Proxies Prohibited*

To encourage full attendance at meetings of the Trustees and due consideration of the matters being voted upon, there shall be no proxies. A Trustee must be present in order to cast a vote.

4.  *Regular Meetings*

The Trustees shall hold regular periodic meetings consistent with the needs of Trust Fund business, provided that there shall be at least two *(2)* regular meetings held during each calendar year. The Trustees shall determine the time and place of all such meetings.

5.  *Special Meetings*

Either the Chairman or the Secretary or any two *(2)* Trustees (one Employer and one Labor Organization Trustee) may call a special meeting of the Trustees by giving written notice to all the other Trustees of the time and place of such meeting, at least thirty (30) days before the date set for the meeting, provided that thirty (30) days advance notice shall not be necessary if all Trustees are agreeable to an earlier meeting.

6.  *Action without a Formal Meeting*

The Trustees may take action without a formal meeting by means of the presentation of a written motion or resolution sent to all Trustees by the administrative manager and the subsequent obtaining of Trustee votes on the motion or resolution in letters, by email, or by facsimile transmission sent by each Trustee to the administrative manager. Any such action shall be reported in the minutes of the next formal meeting.

7.  *Failure of the Trustees to Agree—Arbitration*

In the event the Employer Trustees and Labor Organization Trustees should deadlock on any matter submitted for their consideration, the dispute may be referred by either group of Trustees to an impartial arbitrator in accordance with the labor arbitration rules of the American Arbitration Association. A deadlock shall be deemed to occur when there

is a tie vote on any motion before the Trustees.

The Trustees shall attempt to agree on the joint submission of a statement of the issue in dispute. However, if the Trustees cannot jointly agree upon such a statement, each group of Trustees shall submit to the arbitrator, in writing, its version of the issue in dispute. As part of his award, the arbitrator shall state his determination as to the exact issue.

The decision and award of the arbitrator shall be final and binding upon the Trustees and upon all parties whose interests are affected thereby.

The expenses of any such arbitration, including any court proceedings relating thereto, and the fee of the arbitrator and the reasonable attorney's and witness fees of the parties, shall be chargeable to the Trust Fund.

The procedure specified in this Section shall be the sole and exclusive procedure for the resolution of deadlocked issues.

8.  *Election of Officers*

The Trustees shall elect a Chairman, Vice-Chairman, Secretary and Assistant Secretary. Two of these officers shall be Employer Trustees and two shall be Labor Organization Trustees. When the Chairman is an Employer Trustee, the Vice-Chairman shall also be an Employer Trustee; when the Secretary is a Labor Organization Trustee, the Assistant Secretary shall also be a Labor Organization Trustee, or vice-versa.

The officers shall hold office indefinitely, provided that at the first regular meeting in each odd numbered year, either the Employer Trustees or the Labor Organization Trustees may obtain, on their request, a rotation of all offices and a new election of all officers.

An officer may resign his office at any time. Such resignation shall be effective upon the resignation date specified in a written notice of resignation. Any such notice shall be addressed to the Trustees and shall be mailed, emailed or faxed to the Trust Fund's administrative office. In case of the resignation, death, or termination of appointment of either the Chairman or the Secretary, there shall be a new election of all offices. In case of the resignation, death, or termination of appointment of either the Vice-Chairman or the Assistant Secretary, there shall be a new election of that office only.

9.  *Duties of Officers*

The Chairman shall chair the meetings of the Trustees, shall appoint all committees and shall carry out such other duties as the Trustees may assign to him. The Vice-Chairman, in the absence of the Chairman, shall act in place of the Chairman and perform the Chairman's duties.

The Secretary shall advise the Trustees as to all correspondence and financial reports pertaining to the Trust Fund and shall keep minutes or records of all meetings, proceedings, and actions of the Trustees, provided that these particular responsibilities may be delegated to the administrative manager or to other professional persons retained by the Trustees. The Assistant Secretary, in the absence of the Secretary, shall act in place of the Secretary and perform the Secretary's duties.

10.  *Authorized Signatures*

The Chairman or the Vice-Chairman, and the Secretary or the Assistant Secretary, shall sign all negotiable instruments, certificates, contracts, government reports, and other

— 9 —

GCIU-Employer Retirement      Exhibit 1 to Complaint          Page 27
Fund et. al. v. Peak Printing, Inc.

legal documents on behalf of the Trust Fund, provided that the authority for signing negotiable instruments may be delegated to the administrative manager, corporate trustee (if any), depository bank, or custodian bank. All persons doing business with the Trust Fund may rely on such signatures.

If the Trust Fund issues benefit checks to participating employees or their beneficiaries, the signatures of the Chairman and Secretary may be affixed thereto by a facsimile signature device, under safeguards determined by the Trustees.

11.   *Compensation and Expenses*

No Trustee shall receive any compensation from the Trust Fund for services as a Trustee.

Each Trustee (and each alternate Trustee who is called upon to substitute for an absent Trustee) shall be reimbursed out of the Trust Fund for all expenses properly and actually incurred by him in the administration of the Trust Fund. The Trustees shall establish the conditions for the reimbursement of expenses.

12.   *Benefits* to *Trustees Not Prohibited*

Nothing in this Trust Agreement shall prohibit a Trustee from receiving any benefits under the terms of the Retirement Benefit Plan, if he is otherwise eligible for the same as a participating employee or as a beneficiary of a participating employee.

— 10 —

GCIU-Employer Retirement     Exhibit 1 to Complaint        Page 28
Fund et. al. v. Peak Printing, Inc.

# ARTICLE V
# PARTICIPATION

1.  *Bargaining Unit Employees Entitled to Participate*

Employees in bargaining units covered by collective bargaining agreements between employers and employer associations in the printing and paper products industry and the Graphic Communications Conference of the International Brotherhood of Teamsters, or any local union, district council, joint district council, conference or other bargaining agency affiliated with, merged with, or represented by the Conference, shall be entitled to participate in this Trust Fund.

The Trustees, however, shall have the authority to decline or terminate the participation of a particular bargaining unit if (a) the bargaining parties fail to provide the Trustees with a copy of their collective bargaining agreement or if the language of the contribution provision in such agreement does not meet the requirements of the Trustees, provided that the Trustees, in their discretion, may accept a subscription agreement in lieu of, or to supplement, a collective bargaining agreement; (b) the negotiated contribution rate is lesser, or greater, than the contribution rate or rates allowable under the terms of the Retirement Benefit Plan, provided that the Trustees, in their discretion, may accept the different rate and establish different eligibility rules or benefit formulas for the bargaining unit employees affected; (c) to allow participation as requested would violate any established rule, policy, or procedure  governing participation in the Trust Fund; or (d) there exist other facts and circumstances which, in the Trustees' discretion, justify a declination or termination of participation.

2.  *Labor Organization Employees*

Employees of a participating labor organization may participate in the Trust Fund, provided that the labor organization executes a participation agreement by the terms of which it agrees to make contributions to the Trust Fund on behalf of such employees.

The rate at which the labor organization makes contributions to the Trust Fund shall not exceed the highest negotiated rate in the geographical area encompassed by that labor organization.

3.  *Non-Bargaining Unit Employees of Participating Employers*

Non-bargaining unit employees of a participating employer may participate in the Trust Fund, provided that the employer executes a participation agreement by the terms of which it agrees to make contributions to the Trust Fund on behalf of such employees. The contribution rate for nonbargaining unit employees shall be a monthly rate equivalent to that which the participating employer is required to pay for its bargaining unit employees. Contributions must be paid on all employees falling within an appropriate group as follows:

Group A—Office clerical employees. All office clerical employees at a particular establishment must be considered as a group and the employer must make contributions for all office clerical employees within such group.

Group B—Managerial employees/business agents/officers. All managerial employees, business agents and officers at a particular establishment must be considered as a

GCIU-Employer Retirement Fund et. al. v. Peak Printing, Inc.

Exhibit 1 to Complaint

group and the employer must make contributions for all employees within such group. Further, no contributions shall be accepted for a managerial employee, business agent or officer group unless the employer also contributes for the remaining employees at that establishment.

Group C—Foremen and superintendents of printing department. All non-contract foremen and superintendents of the printing department at a particular establishment must be considered as a group and the employer must make contributions for all foremen and superintendents in such group.

Group D—Other non-bargaining groups. The Trustees may recognize and allow other groups of non-bargaining unit employees to participate, as they may determine.

4.  *Transferred Employees*

Individual participating employees who may be transferred from a bargaining unit position to a non-bargaining unit position at a particular establishment may continue to participate in the Trust Fund, provided that the participating employer makes contributions for all such employees. The contribution rate for transferred employees shall be a monthly rate equivalent to that which the participating employer is required to pay for its bargaining unit employees.

5.  *Trust Fund Employees*

Employees of the Trust Fund (if any), or of a related trust fund may participate in the Trust Fund, provided that the Trustees authorize such participation. The cost of such participation shall be chargeable to the Trust Fund or to the related trust fund.

6.  *Unauthorized Participation*

The only individuals who are eligible to participate in and receive benefits from the Trust Fund shall be those employees in the bargaining units and other groups described in Sections 1, 2, 3, 4, and 5 above. It is expected that participating employers will submit contributions only on behalf of such employees. The receipt by the Trust Fund of contributions which may be submitted on behalf of individuals who are not eligible to participate shall not stop the Trustees from declining or terminating the participation of such individuals nor shall it constitute a waiver of any of the provisions of this Article or of the Retirement Benefit Plan.

7.  *Sole Proprietors and Partners Ineligible*

Sole proprietors and partners are not to be considered as participating employees and shall not be eligible to participate in and receive benefits from the Trust Fund.

8.  *Participation of Non-Bargaining Unit Employees*

It is intended that the participation of groups described in Sections 2, 3, 4 and 5 above (and the resulting coverage under and benefits from this Retirement Benefit Plan) will be in accordance with the non-discrimination laws contained in the Tax Reform Act of 1986 and the Technical and Miscellaneous Revenue Act of 1988 and any amendments or regulations issued subsequent thereto, to the extent such laws and regulations are applicable to this Trust Fund and the Retirement Benefit Plan. Any omissions or oversights will be resolved in accordance with the applicable laws and regulations.

— 12 —

GCIU-Employer Retirement
Fund et. al. v. Peak Printing, Inc.

Exhibit 1 to Complaint

Page 30

# ARTICLE VI
# TRUSTEE RESPONSIBILITIES

1. *General Duty—Receipt of Contributions and*
   *Administration of Retirement Benefit Plan*

It shall be the general duty of the Trustees to receive the employer contributions and any other income or assets which they may obtain and, with such, to administer the Retirement Benefit Plan.

Additionally, the Trustees shall have the specific duties set forth in this Article and such other duties as are imposed upon them by Section 302(c) of the Labor Management Relations Act of 1947, the Employee Retirement Income Security Act of 1974, and other applicable laws.

2. *Compliance with the Internal Revenue Code*

The Trustees shall administer the Trust Fund and the Retirement Benefit Plan so that, to the extent allowed in the Internal Revenue Code, employer contributions are tax deductible and the Trust Fund is tax-exempt.

3. *Funding Standards*

The Trustees, with the assistance of their enrolled actuary, shall establish and maintain a funding standard account, as required by Section 304(b)(l) of the Employee Retirement Income Security Act of 1974, for the purpose of determining that the Retirement Benefit Plan remains actuarially sound according to the funding standards imposed by such Act. The funding standard account shall be reviewed by the Trustees at least once each year and on occasions when the Trustees are considering amendments to the Retirement Benefit Plan which involve an actuarial cost.

The Trustees shall administer the Trust Fund and the Retirement Benefit Plan so that, to the extent such is reasonably within their control, the Plan does not accrue an uncorrected "accumulated funding deficiency", as defined in Section 304(a) of the Employee Retirement Income Security Act of 1974. If it should be determined that an "accumulated funding deficiency" has accrued or will accrue, such deficiency may be corrected by the participating employers and labor organizations, through an adjustment in the amount of contributions, or by the Trustees, through an amendment of the Retirement Benefit Plan adjusting the level of benefits.

The foregoing provision shall not be interpreted as a guarantee that the Retirement Benefit Plan will never accrue an uncorrected "accumulated funding deficiency" or as an indemnification on the part of the Trustees as to any liability which may be imposed upon a participating employer with respect to such deficiency under the applicable provisions of such Act or the Internal Revenue Code.

4. *Basis of Payments to and from Trust Fund*

The basis on which the employer contributions are made to the Trust Fund shall be as specified in the underlying collective bargaining agreement, subscription agreement or participation agreement. The basis on which benefits are paid out of the Trust Fund shall be as specified in the Retirement Benefit Plan.

— 13 —

GCIU-Employer Retirement Fund et. al. v. Peak Printing, Inc.

Exhibit 1 to Complaint

Page 31

5. *Application of Trust Fund Assets*

*As* required by Section 403(c)(l) of the Employee Retirement Income Security Act of 1974, the assets of the Trust Fund shall never inure to the benefit of any participating employer and shall be held for the exclusive purposes of providing benefits to participating employees and their beneficiaries and defraying reasonable administrative expenses.

6. *Fiduciary Standards*

As required by Section 404(a)(l)(A) and (B) of the Employee Retirement Income Security Act of 1974, the Trustees shall discharge their duties and administer the Trust Fund assets solely in the interest of the participating employees and their beneficiaries and for the exclusive purpose of (a) providing benefits to participating employees and their beneficiaries and (b) defraying reasonable expenses of benefit plan administration.

In carrying out their duties the Trustees shall act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

7. *Deposits*

The Trustees shall deposit the contributions or any other monies which they may receive, in one or more banks or similar financial institutions supervised by the United States or a state, pending the allocation of such monies for the payment of current benefits and expenses, or for investment.

8. *Investments*

The Trustees shall invest all contributions or other monies not required for the payment of current benefits and expenses. The Trustees may invest and reinvest in bank accounts, savings and loan accounts, securities, mortgages, deeds of trust, notes, commercial paper, real estate, insurance contracts, and in such other property, real, personal, or mixed, as they deem prudent provided that in the making of investments the Trustees shall diversify such investments as required by Section 404(a)(l)(C) of the Employee Retirement Income Security Act of 1974 so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so. Further, no investment shall be made which would constitute a "prohibited transaction" within the meaning of Section 406 of such Act, provided that the Trustees shall have the authority to apply to the Secretary of Labor for a conditional or unconditional exemption from any of the "prohibited transaction" rules, as they may deem necessary.

9. *Specifically Permitted Investments*

In the event the Trustees designate one or more banks or similar financial institutions supervised by the United States or a state to serve as custodian of the trust assets, or as a corporate co-trustee, or in another fiduciary capacity, the monies belonging to the Trust Fund may be invested in the accounts of such bank or institution, provided that such accounts bear a reasonable interest rate.

Further, to the extent allowed by law, the monies of the Trust Fund may be invested in (a) a common or collective trust fund or pooled investment fund maintained by a bank or trust company supervised by the United States or a state or (b) in a pooled investment fund of an insurance company, or (c) in a group trust sponsored by a qualified investment

— 14 —

manager as that term is defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, even though such bank, trust company, insurance company, or investment manager is a party-in-interest as that term is designated in Section 3(14) of the Employee Retirement Income Security Act of 1974, provided that the bank, trust company, insurance company, or investment manager receives not more than reasonable compensation for managing such an investment.

Finally, to the extent permitted by law, the monies of the Trust Fund may also be invested in certain alternative investments, including, but not limited to, REITS, private equity funds, infrastructure funds, and instruments comprising risk parity and real return strategies, subject to the investment criteria set out in Section 8 above.

10.  *Title to Investments and Other Assets*

Title and voting rights to all investments or other assets of the Trust Fund shall be maintained in the name of the Trust Fund provided that for convenience in transferring securities, title and voting rights to such securities may be held in the name of the Trust Fund's custodian bank, or of its nominee.

Except as may be authorized by regulation of the Secretary of Labor the indicia of ownership of all investments and other assets of the Trust Fund shall not be maintained outside the jurisdiction of the district courts of the United States.

11.  *Fidelity Bond*

The Trustees shall procure a fidelity bond in the amount required by Section 412 of the Employee Retirement Income Security Act of 1974 covering the Trustees, the administrative manager, and all other persons who receive, handle, disburse, or otherwise exercise custody or control of any of the funds or other property of the Trust Fund. The cost of such bond shall be chargeable to the Trust Fund.

12.  *Records*

The Trustees shall maintain records of their administration of the Trust Fund and the Retirement Benefit Plan, including records of all receipts and disbursements, all investments purchased or sold, all participating employee listings, all minutes of Trustee meetings, and all correspondence. No such record shall be destroyed except upon the specific action of the Trustees and destruction shall not be directed until a period of eight (8) years has elapsed from the date the record was created, unless some additional period is required by law.

13.  *Annual Audit*

The Trustees shall engage, on behalf of the participating employees and their beneficiaries, an independent qualified public accountant as that term is defined in Section 103(a)(3)(D) of the Employee Retirement Income Security Act of 1974 and shall authorize such accountant to conduct an annual financial examination of the Trust Fund, as required by Section 103(a)(3)(A) of such Act, and such other examinations as the Trustees may deem necessary. The cost of such examinations shall be chargeable to the Trust Fund.

A statement of the results of each annual examination shall be submitted to the Trustees for their review and, further, shall be made part of the Trust Fund's annual report.

GCIU-Employer Retirement   Exhibit 1 to Complaint   Page 33
Fund et. al. v. Peak Printing, Inc.

14. *Annual Actuarial Statement*

The Trustees shall engage, on behalf of the participating employees and their beneficiaries, an enrolled actuary, as that term is defined in Section 103(a)(4)(C) of the Employee Retirement Income Security Act of 1974, and shall authorize such actuary to prepare an annual actuarial statement as to the Retirement Benefit Plan, as required by Section 103(d) of such Act. The cost of such statement shall be chargeable to the Trust Fund.

The annual actuarial statement shall be submitted to the Trustees for their review and, further, shall be made part of the Trust Fund's annual report.

The enrolled actuary shall also be authorized to conduct an annual actuarial valuation as required under Section 304(c)(7) of such Act.

15. *Summary Plan Description*

The Trustees shall furnish to the Department of Labor, upon request, any documents related to the employee benefit plan, including but not limited to the latest summary plan description, and any modifications or changes in the information contained in such description, as required by Section 104(a)(6) of the Employee Retirement Income Security Act of 1974.

The Trustees shall also furnish to participating employees and to each beneficiary receiving benefits copies of the summary plan description and copies of any modifications or changes in the information in such description, as required by Section 104(b)(l) of such Act.

16. *Annual Report*

The Trustees  shall prepare and file with the Department of Labor an annual report as required by Sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 as amended. The Trustees shall also furnish a report to participating employers and the participating labor organizations within 30 days after the due date for filing of the annual report that contains the summary plan information set forth under Section 104 (d) of such Act.  In no case shall a participating employer or participating labor organization be entitled to receive more than one copy of any such document described in Section 104(d) of the Act during any one 12-month period. The Trustees may impose a reasonable charge to cover copying, mailing, and other costs of furnishing copies of the required information.

17. *Statements of Accrued Pension Benefits*

As required by Section 105(a)(1)(B) of the Employee Retirement Income Security Act of 1974, the Trustees shall furnish a pension benefit statement at least every 3 years to each participating employee with a nonforfeitable accrued benefit and who is employed by a participating employer at the time the statement is to be furnished, and to a participating employee or beneficiary upon written request. The pension benefit statement shall indicate, on the basis of the latest information available, (a) the total benefits accrued and (b) the non-forfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable. Such statements may be delivered in written, electronic, or other appropriate form to the extent such form is reasonably accessible to the participating employee or beneficiary. Alternatively, the Trustees may comply with the requirements of Section 105 (a) (1) (B) of such Act by providing at least once a year to participating

— 16 —

employees notice of the availability of the pension benefit statement and the ways in which the participating employee may obtain such statement. Such notice may be delivered in written, electronic, or other appropriate form to the extent such form is reasonably accessible to the participating employee. In no case shall a participating employee or beneficiary be entitled to more than one pension benefit statement in any 12-month period.

In addition, the Trustees shall furnish to each participating employee who during the Plan Year separates from service covered by the Benefit Plan, who is entitled to a deferred vested benefit under the Benefit Plan as of the end of such Plan Year, and with respect to whom retirement benefits were not paid under the Benefit Plan during such Plan Year, a statement describing the nature, amount and form of the deferred vested benefit to which such participating employee is entitled. Such statement shall also include a notice to the participating employee of any benefits which are forfeitable if the participant dies before a certain date. The Trustees shall also file an annual registration statement with the Internal Revenue Service concerning participating employees to whom such statements have been issued, as required by Section 6057 of the Internal Revenue Code.

18.  *Pension Funding Notice*

The Trustees shall provide an annual pension funding notice to the Pension Benefit Guaranty Corporation, to each participating employee and beneficiary, to the participating labor organization, and to each participating employer. The notice shall contain the specific information required for multiemployer plans as set forth under Section 101(f)(2) of the Employee Retirement Income Security Act of 1974 and shall be provided to the applicable parties not later than 120 days after the end of the Plan Year to which the notice relates. Such notice may be provided in written, electronic, or other appropriate form to the extent such form is reasonably accessible to persons to whom the notice is required to be provided.

19.  *Income Tax Withholding and Reporting*

The Trustees (or their duly appointed custodian bank) shall annually provide each retired employee or beneficiary receiving benefits with notice of the right to elect against withholding of income tax from his pension benefits and the right to revoke such election as required by Section 3405 of the Internal Revenue Code.

The Trustees shall also furnish to each retired employee or beneficiary receiving benefits an annual statement of the benefits paid to him, as required by Section 6051 (a) of such Code.

20.  *Documents to be Examined or Furnished*

The Trustees shall make copies of (a) this Trust Agreement, (b) the latest summary plan description, (c) the latest annual report, (d) the applicable collective bargaining agreement, and (e) any other contracts or instruments under which the employee pension benefit plan is established or operated available for examination by participating employees or their beneficiaries in the Trust Fund office as required by Section 104(b)(2) of the Employee Retirement Income Security Act of 1974.

The Trustees shall upon written request by any participating employee or beneficiary, furnish to the participating employee or beneficiary a copy of (a) this Trust Agreement, (b) the latest updated summary plan description, (c) the latest annual report, (d) any terminal report, (e) the applicable collective bargaining agreement, and (f) any other contracts or instruments under which the employee pension benefit plan is established or operated,

as required by Section 104(b)(4) of such Act. Such copies shall be furnished within thirty (30) days of the request. The Trustees may impose a reasonable charge for such copies as may be allowed by regulation of the Secretary of Labor.

The Trustees shall also, upon written request by a participating employee or beneficiary, furnish to the participating employee or beneficiary a copy of a) any periodic actuarial report (including any sensitivity testing received by the Trust Fund for any Plan Year which has been in the Trust Fund's possession for at least 30 days, b) a copy of any quarterly, semi-annual or other financial report prepared for the Trust Fund by any Fund Investment Manager or advisor or other fiduciary which has been in the Trust Fund's possession for at least 30 days, and c) any application filed with the Secretary of the Treasury requesting an extension under Section 304 of the Act or Section 431 (d) of the Internal Revenue Code of 1986, as required by Section 101(k) of the Act subject to any limitations imposed by Section 101(k) with regard to individually identifiable information and proprietary information. Such copies shall be furnished within 30 days of the request but only one copy of any report or application may be received during one 12 month period. The Trustees may impose a reasonable charge to cover copying, mailing and other costs of furnishing copies of the information as may be allowed by regulations of the Secretary of Labor. This provision also applies to the participating employers and labor organizations.

21.   *Procedure for Establishing Funding Policy*

As required by Section 402(b)(l) of the Employee Retirement Income Security Act of 1974, the Trustees shall meet periodically with the administrative manager, enrolled actuary, independent qualified public accountant, investment manager or managers (if any), and such other Trust Fund advisers as may be appropriate for the purpose of anticipating the short and long run financial needs of the Trust Fund and of establishing an appropriate funding policy and method for the Trust Fund.

The funding policy and method shall be considered by the Trustees, or by their investment manager or managers (if any), in the management of trust fund investments.

22.   *Payments to Pension Benefit Guaranty Corporation*

The Trustees shall pay to the Pension Benefit Guaranty Corporation the plan termination insurance premiums fixed by the Corporation, as required by Section 4002(a) of the Employee Retirement Income Security Act of 1974. Such premiums shall be chargeable to the Trust Fund. Consistent with regulations issued by the Corporation, the Trustees shall have the authority to adopt a definition of a plan "participant" and to compute and pay premiums on the basis of that "definition".

23.   *Benefit Claim and Review Procedures*

The Trustees shall establish administrative procedures whereby a participating employee or beneficiary who makes a claim for benefits and that claim is denied, is notified, in writing, of the reasons for such denial including specific references to the Retirement Benefit Plan provisions upon which the denial is based, a description of any additional information which is necessary to perfect the claim and why the information is necessary, and which afford such a participating employee or beneficiary a reasonable opportunity for a full and fair review, as required by Section 503 of the Employee Retirement Income Security Act of 1974. Such procedures shall include the Benefit Claim

— 18 —

GCIU-Employer Retirement      Exhibit 1 to Complaint               Page 36
Fund et. al. v. Peak Printing, Inc.

and Review Procedures for a participating employee or beneficiary as set out in Article XIII, Section 5 of the Retirement Benefit Plan

# ARTICLE VII
# ALLOCATION OR DELEGATION OF TRUSTEE RESPONSIBILITIES

1. *Allocation of Responsibilities to Committees*

The Trustees may allocate to one or more committees of Trustees all or part of the following responsibilities, with full power to act: (a) the responsibility for managing the Trust Fund investments (if not otherwise delegated to a qualified investment manager); (b) the responsibility for reviewing and determining benefit claims of participating employees and their beneficiaries; (c) the responsibility for conducting hearings and issuing determinations as provided for in Article XI, Section 3 hereof; (d) the responsibility for resolving questions or problems that may be encountered in connection with payroll auditing or employer withdrawal liability activities; (e) the responsibility for resolving questions or problems that may be encountered in connection with the collection of delinquent employer accounts; (f) the responsibility for resolving questions or problems that may be encountered in connection with the day-to-day work of the administrative manager; (g) the responsibility for reviewing the performance of the qualified investment managers (if any), and of the other persons retained by the Trustees.

In the event the Trustees elect to allocate any of the stated responsibilities they shall do so by the adoption of a motion or resolution calling for the appointment of a committee of Trustees (consisting of equal numbers of Employer Trustees and Labor Organization Trustees) and specifying the particular responsibility that is being allocated. With respect to the responsibility that is allocated, the committee shall have the powers of the full Board of Trustees. Any action to be taken by the committee shall be determined according to the voting formula contained in Article IV, Section 1 hereof. If the committee members deadlock on any matter submitted for their consideration such matter shall be referred to the full Board of Trustees for review and action.

Nothing contained herein shall in any way limit the authority of the Trustees to create additional committees for the purpose of assisting with or expediting the affairs of the Trust Fund, provided that any such committee shall be empowered only to make recommendations with respect to the matters referred to it.

2. *Delegation of Investment Responsibilities*

The Trustees may delegate all or part of their responsibilities for the management of the Trust Fund investments to one or more qualified investment managers, as that term is defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, i.e., (a) an investment adviser registered as such under the Investment Advisers Act of 1940, (b) a bank as defined in that Act, or (c) an insurance company qualified to manage, acquire, or dispose of employee benefit plan assets under the laws of more than one state.

In the event the Trustees elect to delegate investment responsibility they shall do so by the adoption of a motion or resolution making the delegation to a designated investment manager(s). The delegation shall be effective when the investment manager(s) accepts the delegation and acknowledges in writing his status as a fiduciary with respect to the Trust Fund.

Exhibit 1 to Complaint

GCIU-Employer Retirement Fund et. al. v. Peak Printing, Inc.

3.   *Delegation of Other Responsibilities*

The Trustees may delegate all or part of their responsibilities with respect to the administration of the Trust Fund or the Retirement Benefit Plan (except investment responsibilities) to their administrative manager or to any other person whom they may designate for such purpose.

In the event the Trustees elect to delegate a particular responsibility they shall do so by the adoption of a motion or resolution making the delegation to a designated person. The delegation shall be effective when the designated person accepts the delegation. If the delegation involves a responsibility other than one which is ministerial in nature, the designated person shall also acknowledge in writing his status as a fiduciary with respect to the Trust Fund.

4.   *Review of Performance*

In the event the Trustees elect to allocate or delegate Trustee responsibilities they shall periodically review the performance of the persons to whom such responsibilities have been allocated or delegated.

GCIU-Employer Retirement Exhibit 1 to Complaint        Page 38
Fund et. al. v. Peak Printing, Inc.

# ARTICLE VIII
# TRUSTEE POWERS

1. *General Powers*

Except as may be expressly limited by the terms of this Trust Agreement, the Trustees shall have full and exclusive authority to control and administer the Trust Fund and the Retirement Benefit Plan.

The authority of the Trustees encompasses not only the specific powers recited in the various paragraphs of this Trust Agreement but also includes the general power to do all things and take all actions, including the expenditure of Trust Fund monies, which they may deem necessary to carry out the purpose of this Trust Agreement. The Trustees may implement their powers through the adoption of appropriate motions, resolutions, or administrative rules and regulations. Unless otherwise stated in this Trust Agreement, the Trustees will serve as fiduciaries in the creation, the administration and design of the Benefit Plan hereunder and in the implementation of any action resulting from these functions or in the exercise of any other general or specific power set out in this Trust Agreement.

2. *Specific Powers Discretionary*

The recitation of specific powers in this Trust Agreement shall not be interpreted as compelling the exercise of any such power. The exercise of specific powers is discretionary with the Trustees.

3. *Benefit Plan Being Administered*

The employee pension benefit plan being administered through this Trust Fund as of the effective date of this Trust Agreement is described as the

**GCIU — Employer**
**Retirement Benefit Plan**

4. *Amendments to the Benefit Plan*

The Trustees shall have the authority to amend the Retirement Benefit Plan, in whole or in part, as they may determine. Such amendments may involve the rules under which participating employees and beneficiaries become eligible for pension benefits, the nature of the pension benefits to be provided, including any related benefits, and the amount and duration of such benefits.

No amendment shall be made if the same is prohibited by the provisions of the Employee Retirement Income Security Act of 1974 or the Internal Revenue Code and, if the subject matter is governed by the Act, or the Code, the amendment shall conform to the requirements of the Act or the Code.

5. *Means of Providing Benefits*

The Trustees may provide the benefits specified in the Retirement Benefit Plan, in whole or in part, directly from the Trust Fund or may contract with an insurance carrier or other legally authorized entity, to underwrite or provide such benefits.

GCIU-Employer Retirement
Fund et. al. v. Peak Printing, Inc.

Exhibit 1 to Complaint

6.   *Facility of Payment*

The Trustees shall have the authority to adopt rules by the terms of which benefit payments owing to minors or incompetents may be paid instead to a person or institution providing care or other services to such minor or incompetent, even though a legal guardianship does not exist. Benefit payments made under any such rules shall fully discharge the Trust Fund's obligation to the minor or incompetent.

7.   *Administrative Manager*

The Trustees shall have the authority to retain, at the expense of the Trust Fund, an administrative manager to assist the Trustees in the administration of the Trust Fund and the Retirement Benefit Plan. Such administrative manager may be retained on a contract or salaried basis, as the Trustees may determine.

In the event the Trustees employ a salaried administrative manager they shall also have the authority to employ such additional administrative staff personnel as may be necessary.

The Trustees shall periodically review the performance of the administrative manager.

8.   *Banking Services*

The Trustees shall have the authority to retain, at the expense of the Trust Fund, one or more banks or similar financial institutions supervised by the United States or a state, to perform depository or custodial services, or to serve as corporate trustee or co-trustee, on behalf of the Trust Fund.

The Trustees shall periodically review the performance of the banks which they have retained to provide banking services.

9.   *Other Professional and Non-Professional Persons*

The Trustees shall have the authority to retain, at the expense of the Trust Fund, actuaries, attorneys, employee benefit plan consultants, investment managers, investment performance analysts, payroll auditors, collection agents, and other professional or non-professional persons, as they may deem necessary. Unless limited by the provisions of the Employee Retirement Income Security Act of 1974, the retention of any such professional or non-professional help may be on a contract or salaried basis, as the Trustees may determine.

The Trustees shall periodically review the performance of the professional or nonprofessional persons they have retained.

10.   *Obtaining of Necessary Premises, Equipment, and Supplies*

The Trustees shall have the authority to purchase or lease suitable premises and equipment and to purchase materials and supplies, at the expense of the Trust Fund, as they may deem necessary.

11.   *Insurance*

The Trustees shall have the authority to purchase policies of insurance (liability, property damage, casualty, and errors and omissions) to protect the Trust Fund and to protect themselves, their administrative manager, and their employees (if any), with respect

— 22 —

to their activities on behalf of the Trust Fund, as they may deem necessary. The costs of such insurance policies shall be chargeable to the Trust Fund.

Any policy of errors and omissions insurance shall contain a recourse clause as required by Section 410(b)(l) of the Employee Retirement Income Security Act of 1974, provided that nothing herein shall prevent a Trustee (or an employer, employer association, or labor organization acting on his behalf) or the administrative manager, or the Trust Fund employees (if any) from purchasing for themselves a waiver of the recourse clause or a separate policy insuring against such recourse.

12.  *Borrowing Money*

The Trustees shall have the authority to borrow money for the Trust Fund, with or without security, as they may deem necessary.

13.  *Reserve Funds*

The Trustees shall have the authority to maintain reasonable reserve funds, for future contingencies, as they may deem necessary.

14.  *Payment of Taxes*

The Trustees shall have the authority to pay, at the expense of the Trust Fund, all real and personal taxes, and other taxes and assessments of any kind, which may be lawfully levied or assessed against the Trust Fund.

15.  *Refunds of Contributions Erroneously Paid*

The Trustees shall have the authority to adopt rules by the terms of which refunds of contributions may be made to a participating employer where the employer has paid such contributions in error, as may be allowed by Section 403(c) of the Employee Retirement Income Security Act of 1974.

16.  *Penalties for False or Withheld Information*

The Trustees shall have the authority to adopt rules and regulations by the terms of which reasonable penalties or forfeitures may be imposed upon participating employees or beneficiaries who (a) falsify any information requested of them in the administration of the Trust Fund and the Retirement Benefit Plan, or (b) fail to provide requested information within a reasonable time.

17.  *Correction of Errors*

It is recognized and acknowledged by all parties that the Trustees will provide eligibility credits and benefits to participating employees and their beneficiaries based on Trust Fund records. It is also recognized and acknowledged that such records could be incorrect due to (a) employers reporting individuals who are not eligible for participation, (b) employers reporting incorrect names or incorrect social security numbers, (c) employers reporting more or less than the hours or contributions required to be reported, (d) delinquent employer reports, (e) employees or beneficiaries submitting incorrect or false benefit applications, (f) recording or computation errors by the administrative manager, (g) computer errors, or (h) other similar circumstances. The Trustees shall have the authority to correct the Trust Fund records whenever errors are discovered and to terminate participation, adjust eligibility credits or benefits, or seek the recovery of benefit overpayments,

— 23 —

GCIU-Employer Retirement                Exhibit 1 to Complaint                Page 41
Fund et. al. v. Peak Printing, Inc.

as they may determine.

18. *Prosecution of Legal Action or Claims*

The Trustees shall have the authority to originate and maintain any legal actions, or claims involving potential legal actions, at the expense of the Trust Fund, as they may deem necessary. All such actions and claims shall be prosecuted in the name of the Trust Fund or in the name of an assignee.

19. *Defense of Legal Actions or Claims*

The Trustees shall have the authority to defend all legal actions, claims involving potential legal actions, and investigatory proceedings, initiated against the Trust Fund or against one or more of the Trustees, or former Trustees, or the administrative manager, or against one or more of the employees of the Trust Fund (if any) which relate to the administration of the Trust Fund or the Retirement Benefit Plan. Except as stated below, the defense of such actions, claims and proceedings shall be at the expense of the Trust Fund.

If the final court decree establishes personal liability on the part of specified Trustees, or the administrative manager, or the employees of the Trust Fund (if any) for breach of their fiduciary responsibilities, as permitted by Section 409(a) of the Employee Retirement Income Security Act of 1974, and orders that the specified persons are to bear the expenses of their own defense, the attorney fees and costs of the specified persons shall not be chargeable to the Trust Fund. If attorney fees and costs have already been charged to the Trust Fund, the specified persons shall be obligated to repay the Trust Fund for their pro rata share of such fees and costs.

20. *Compromise of Legal Actions or Claims*

The Trustees shall have the authority to compromise, settle, or release all legal actions, or claims involving potential legal actions, in favor of or against the Trust Fund on such terms and conditions as they may determine.

21. *Subscription and Participation Agreements*

The Trustees shall have the authority to create and distribute subscription and participation agreements, at the expense of the Trust Fund, and to insist upon the execution and filing of such agreements as a condition precedent to the acceptance of contributions.

22. *Participation in Non-Profit Educational Organizations*

The Trustees shall have the authority to participate in non-profit foundations, corporations, councils, committees, or other organizations which sponsor educational programs or provide educational materials pertaining to the administration of trust funds of this nature and of employee benefit plans. If the Trustees act to participate in any such non-profit organization, the membership or participation fees of the organization shall be chargeable to the Trust Fund.

The Trustees shall also have the authority to purchase educational materials and to provide for the attendance of the Trustees, or of their administrative manager, or of such of their employees (if any), as they may designate, at educational conferences and meetings. The costs of such materials and attendance shall be chargeable to the Trust Fund.

23. *Reciprocity*

The Trustees shall have the authority to enter into reciprocal agreements with other

— 24 —

GCIU-Employer Retirement Exhibit 1 to Complaint Page 42
Fund et. al. v. Peak Printing, Inc.

employee pension benefit funds for the exchange of eligibility credits or monies, or for the payment of pro rata benefits, on behalf of employees who may terminate their participation in the Trust Fund and begin participation in a reciprocal trust fund, and vice-versa.

24. *Mergers*

The Trustees may accept mergers of other employee pension benefit trust funds, maintained by participating employers or jointly by participating employers and participating labor organizations, into this Trust Fund so that individual participants in such other trust funds can become participants in this Trust Fund. To that end, the Trustees shall have the authority to negotiate and consummate appropriate merger agreements which provide for the transfer of assets and liabilities from other employee pension benefit trust funds to this Trust Fund.

Any such merger agreement shall conform to these standards: (a) the value of the retirement benefits assumed by this Trust Fund (as determined on the basis of actuarial standards approved by the Trustees) with respect to the participants of the other trust fund who had retired prior to the date of the merger agreement shall not exceed the market value (determined on the date of transfer) of the assets transferred to this Trust Fund on behalf of such retired participants and (b) the value of the aggregate current service credited to the participants in the other trust fund who had not retired as of the date of the merger agreement shall not exceed one year of current service for each $1,300 (or other amount which may be fixed by the Trustees) of market value (determined on the date of transfer) of the remaining assets transferred to this Trust Fund on behalf of such participants, after allocation for retired participants.

Any such merger agreement shall also include such requirements as may be applicable under Section 208 of the Employee Retirement Income Security Act of 1974 and under the applicable provisions of the Internal Revenue Code.

25. *Eligible Rollover Plan Distributions*

The Trustees shall have the authority to administer direct trustee-to-trustee transfers of eligible rollover plan distributions to financial institutions selected by the participant (or spouse or former spouse). The Trustees shall also have the authority to implement any necessary procedures and policies which are required by the Unemployment Compensation Amendment Act of 1992 and any amendments or regulations issued relating thereto in order to comply with the Act and regulations.

26. *Interpretation and Application of Documents*

The Trustees shall have the authority to interpret and apply the provisions of this Trust Agreement, or of the Retirement Benefit Plan, or of their own motions, resolutions, and administrative rules and regulations, or of any contracts, instruments, or writings which they may have adopted or entered into.

27. Adoption and Implementation of a Funding Improvement Plan and Rehabilitation Plan

The Trustees shall have the authority to adopt and implement a funding improvement plan and a rehabilitation plan in accordance with the provisions of ERISA Section 305, should the enrolled actuary certify that the Retirement Benefit Plan is in endangered or critical status. In this regard, the Trustees shall provide the participating employers and

GCIU-Employer Retirement Exhibit 1 to Complaint                Page 43
Fund et. al. v. Peak Printing, Inc.

participating labor organizations with a schedule or schedules showing revised benefit and/or contribution structures which, if adopted, might reasonably be expected to allow the Retirement Benefit Plan to achieve applicable funding benchmarks (if the Retirement Benefit Plan is in endangered status) or to allow the Retirement Benefit Plan to emerge from critical status or to stave off insolvency.

If upon expiration of a collective bargaining agreement in effect at the time the Retirement Benefit Plan entered endangered or critical status, a participating employer and the participating labor organization are unable to agree on a new contract that includes benefit and/or contribution schedules necessary to allow the Retirement Benefit Plan to meet the applicable benchmarks, if the Retirement Benefit Plan is in endangered status, or to allow the Retirement Benefit Plan to emerge from critical status, or to stave off insolvency, the Trustees shall have the authority to implement the default schedule as described under ERISA Section 305(c)(1) (B)(i) (I) and Section 305 (e)(1)(B)(ii).

Nothing in this section should be construed as to limit the Trustees' authority and powers under the Trust Agreement or applicable provisions of ERISA.

# ARTICLE IX
## CONTRIBUTIONS AND COLLECTIONS

1. *Contribution Reporting Forms*

The Trustees shall create and make available, at the expense of the Trust Fund, contribution reporting forms for the use of participating employers in making their contributions.

2. *Contributions Due*

Contributions shall be made on all hours worked or paid for, as required by the terms of the collective bargaining agreement. Hours worked include overtime hours. Hours paid for generally include vacation, sick, holiday, and probationary hours, whether specifically included in the collective bargaining agreement, or not.

3. *Contribution Due Date*

All contributions shall be due by the fifteenth (15) day of the month following the month in which they accrue.

4. *Delinquent Contributions*

A participating employer shall be considered to be delinquent in the payment of contributions if he (a) fails to submit a contribution reporting form, and the contributions detailed therein, by the close of business on the due date, or (b) fails to submit contributions on behalf of all the employees for whom contributions are required under the applicable collective bargaining agreement, subscription agreement, or participation agreement, or (c) fails to properly compute the contributions according to the required contribution formula specified in the applicable collective bargaining agreement, subscription agreement, or participation agreement.

The Trustees shall undertake reasonable efforts to collect known delinquent contributions and related claims.

5. *Audit of Employer Books and Records*

The Trustees shall have the authority to audit the payroll books and records of a participating employer, either directly or through a qualified public accountant, as they may deem necessary in the administration of the Trust Fund. Such payroll audit may be undertaken pursuant to a routine payroll audit program or on a case by case basis, as the Trustees may determine.

Whenever a payroll audit is authorized, the participating employer involved shall make available to the Trustees, or the qualified public accountant designated by them, its payroll books and records. Such books and records shall include (a) all records which the employer may be required to maintain under Section 209(a)(l) of the Employee Retirement Income Security Act of 1974, and (b) time cards, payroll journals, payroll check registers, cancelled payroll checks, copies of the employer's federal, state, and local payroll tax reports, and all other documents and reports which reflect the hours and wages or other compensation of the employees or from which such can be verified (or electronic versions thereof).

— 27 —

In the event the payroll audit discloses that the participating employer has not paid contributions, as required by the applicable collective bargaining agreement, subscription agreement, or special agreement, the employer shall be liable for the costs of the audit.

6.   *Liquidated Damages, Attorney Fees, Interest, and Other Charges*

It is recognized and acknowledged by all parties, including the participating employers, that the prompt and accurate payment of contributions is essential to the maintenance of an employee benefit trust fund and benefit plan and that it would be extremely difficult, if not impossible, to fix the actual expense and damage to the trust fund and plan which would result from the failure of a participating employer to pay the required contributions within the time provided.

Therefore, if an employer is delinquent in the payment of contributions by the tenth (10th) day following the contribution due date, or by such other date as the Board of Trustees may from time to time establish, the delinquent employer shall be liable, in addition, for liquidated damages of ten percent (10%) of the amount of the contributions which are owed, or twenty five dollars ($25), whichever is greater.

If the delinquent contributions or liquidated damages are not paid by the tenth (10th) day of the month following the month in which they were due, or by such other date as the Board of Trustees may from time to time establish, the account will be referred to legal counsel, or a collection agent, for collection. Upon such referral, the delinquent employer shall be liable for reasonable attorney fees and for reasonable costs incurred in the collection process, including court fees, audit fees, etc. In addition, delinquent contributions shall bear interest at the rate of ten percent (10%) per annum until paid, computed from the contribution due date.

7.   *Additional Liquidated Damages in Event of Court Judgment*

In the event it is necessary to pursue a collection to a court judgment, the delinquent employer shall be liable for additional liquidated damages of ten percent (10%) of the amount of the contributions which are owed, making a total of twenty percent (20%). As provided in Section 515 of the Employee Retirement Income Security Act of 1974, as amended, the employer shall, if a judgment is entered, be obligated to the Trust Fund for the unpaid contributions, interest on the unpaid contributions, liquidated damages of twenty percent (20%), reasonable attorney's fees and costs, and such other legal or equitable relief as may be appropriate.

8.   *Waiver of Charges*

The Trustees shall have the authority to waive all or part of the payroll audit costs, liquidated damages, interest, attorney fees, or collection costs, for good cause shown.

9.   *Protection of Employees in Cases of Delinquency*

To protect participating employees and beneficiaries in situations where participating employees may be denied pension credits because their employer is delinquent in the payment of contributions, the Trustees shall have the authority to extend pension credits to such employees.

The extension of pension credits shall not, however, release the delinquent employer from the responsibility for payment of the contributions owed.

GCIU-Employer Retirement       Exhibit 1 to Complaint              Page 46
Fund et. al. v. Peak Printing, Inc.

10. *Coordination with Provisions in Collective Bargaining Agreements*

In the event the underlying collective bargaining agreement contains provisions relating to delinquencies that specify additional remedies, or obligate the delinquent employer to greater amounts of liquidated damages, interest, or attorney fees than those set forth herein, the Trustees, at their option, may pursue the additional remedies or impose the greater charges.

The Trustees shall not be obligated, however, to pursue the collection of delinquent accounts through the grievance-arbitration procedures (if any) provided for in the applicable collective bargaining agreement.

GCIU-Employer Retirement Exhibit 1 to Complaint                    Page 47
Fund et. al. v. Peak Printing, Inc.

# ARTICLE X
# EMPLOYER WITHDRAWAL LIABILITY

1.  *Calculation and Collection of Employer Withdrawal Liability*

As provided in the Multi-Employer Pension Plan Amendments Act of 1980 (PL 96-364) (hereafter the Act), in the event a participating employer should withdraw from the Trust Fund, the Board of Trustees shall (a) determine the amount of the employer's withdrawal liability (if any), (b) notify the employer of the amount of the withdrawal liability and (c) collect the amount of withdrawal liability from the employer. In carrying out this responsibility the Board of Trustees shall apply the terms and provisions of the Act, and any regulations issued thereunder, provided, however, that the Board of Trustees may from time to time adopt alternate methods or formulae as permitted in the Act.

Sections 2, 3, and 4, set forth hereafter, have been adopted as alternates under the Act.

2.  *Determination of Amount of Unfunded Vested Benefits Allocable to Withdrawing Employer*

As allowable under 4211(a) of the Act, the Board of Trustees shall determine the amount of unfunded vested benefits allocable to a withdrawing employer in accordance with the formula set out in Section 4211(b) of the Act, and any regulations issued thereunder, with the following modifications: (a) the initial pool will be based on the December 31, 2006 unfunded vested benefit liability, reduced by the value of all outstanding claims for withdrawal liability that the Trust Fund can reasonably expect to receive for employers withdrawing before 2006, (b) the calculation of subsequent pools established for changes in unfunded vested benefits as defined in 4211(b) (2) (B) of the Act will continue to reflect the value of all outstanding claims for withdrawal liability that the Trust Fund can reasonably expect to receive for employers withdrawing before 2006, and (c) in any Plan year where the unfunded vested benefit liability at the end of the prior year is zero, the unfunded vested benefit liability allocation pools for prior years will be considered fully amortized and reset to zero.

In making such a determination, reasonable actuarial assumptions and methods shall be applied as allowable under Section 4213(a)(1) of the Act and as determined by the Fund's actuary.

3.  *Payment of Withdrawal Liability in Monthly Installments*

As allowable under Section 4219(c)(3) of the Act, the annual withdrawal liability payments owing to this Trust Fund by a withdrawing employer shall be payable in twelve equal monthly installments, due on the first (1st) day of each month, in advance.

4.  *Adoption of Administrative Rules and Regulations*

The Board of Trustees shall adopt administrative rules and regulations relating to the processing of employer withdrawal situations.

5.  *Notice of Potential Withdrawal Liability*

As provided in Section 101(1) of the Employee Retirement Income Security Act of 1974, the Board of Trustees shall, upon written request, furnish to any employer who has an obligation to contribute to the Fund (a) a notice of the estimated amount of what would

— 30 —

be the employer's withdrawal liability if the employer withdrew on the last day of the plan year preceding the date of the request, and (b) an explanation of how such estimated withdrawal liability was calculated, including (i) the actuarial assumptions and methods used to determine the value of the Retirement Benefit Plan's liabilities and assets; (ii) the data regarding employer contributions, unfunded vested benefits and annual changes in the Retirement Benefit Plan's vested benefits; and (iii) changes in the application of any relevant limitations in the estimated withdrawal liability. Such notice shall be furnished to the requesting employer within 180 days after the request but in no case shall an employer be entitled to receive more than one such notice during any one 12-month period. The Board of Trustees shall impose a reasonable charge on each employer requesting such a notice.

# ARTICLE XI
# BENEFIT CLAIM, HEARING AND ARBITRATION PROCEDURES

1.   *Hearings Required*

   The Trustees shall afford a hearing to any participating employer, employer association, or labor organization who is aggrieved by any decision or action of the Trustees, or of the administrative manager acting on their behalf. The aggrieved party may present the appeal in person, or through a representative, or by written submission.

   It shall be the obligation of any such person to exhaust the hearing procedures specified in this Article before instituting final and binding arbitration concerning any such decision or action.

2.   *Requests for Hearings*

   Any person seeking a hearing shall make a request therefore, in writing, within sixty (60) days after being apprised of, or learning of, the complained of decision or action. All such requests shall be addressed to the Trustees and shall be mailed to the Trust Fund's administrative office.

3.   *Conduct of Hearings*

   Upon receipt of a request for a hearing, the Trustees shall fix a date and place for a hearing. At the hearing, the complaining person shall be entitled to present his position and any witnesses or other evidence in support thereof. The complaining person may be represented by an attorney or by any other representative of his choosing. In the alternative, the complaining person may choose to present his appeal by written submission.

   The Trustees shall, within thirty (30) days following the hearing, issue a written decision affirming, modifying, or setting aside the former decision or action.

4.   *Hearing Rules*

   The Trustees shall have the authority to adopt rules governing the conduct of any such hearing.

5.   *Arbitration - Mandatory*

   If the complaining person is dissatisfied with the written decision of the Trustees, he shall have the right to appeal the matter to mandatory, final and binding arbitration in accordance with the labor arbitration rules or the employee benefit claim rules of the American Arbitration Association, provided that he submit a request for arbitration to the Trustees, in writing, within sixty (60) days of receipt of the written decision. If an appeal to arbitration is requested, the Trustees shall submit to the arbitrator a certified copy of the record upon which the Trustees' decision was made.

   The question for the arbitrator shall be (1) whether the Trustees were in error upon an issue of law, (2) whether they acted arbitrarily or capriciously in the exercise of their discretion, or (3) whether their findings of fact were supported by substantial evidence. The decision of the arbitrator shall be final and binding upon the Trustees, upon the appealing party, and upon all other parties whose interests are affected thereby. The expenses of the arbitration shall be borne equally by the appealing party and by the Trust Fund, unless otherwise ordered by the arbitrator.

GCIU-Employer Retirement   Exhibit 1 to Complaint   Page 50
Fund et. al. v. Peak Printing, Inc.

6.   *Benefit Claim and Review Procedures for a Participating Employee or Beneficiary*

The Trustees shall provide benefit claim and review procedures for any participating employee or beneficiary who has made a claim for benefits and is aggrieved by any decision or action of the Trustees, or of the administrative manager acting on their behalf. The aggrieved party may present the appeal under the Benefit Claim and Review Procedures set out in Article XIII, Section 5 of the Retirement Benefit Plan.

7.   *Sole and Exclusive Remedies*

These Benefit Claim, Hearing and Arbitration procedures are the sole and exclusive remedies for all complaining persons.

— 33 —

# ARTICLE XII
# LIMITATIONS

1.   *Liabilities and Debts of Trust Fund*

No participating employer, employer association, or labor organization, shall be responsible for any liabilities or debts of the Trust Fund. This provision, however, shall not relate to any liability that may be imposed upon a participating employer under Section 4971 of the Internal Revenue Code or Title IV of the Employee Retirement Income Security Act of 1974, as amended by the Multi-Employer Pension Plan Amendment Act of 1990.

2.   *Liabilities and Debts of Participating Parties*

No participating employer, employer association, or labor organization shall, by reason of their participation in the Trust Fund, become responsible for the liabilities or debts of any other participating employer, employer association, or labor organization.

3.   *Personal Liabilities of Trustees and Fiduciaries*

No Trustee or other fiduciary shall incur any personal liability in connection with the administration of the Trust Fund or the Retirement Benefit Plan, except for such liability that may be established in accordance with Section 409(a) of the Employee Retirement Income Security Act of 1974.

Except as may be required by applicable provisions of such Act, no Trustee or other fiduciary shall be held personally liable for any breach of fiduciary responsibilities in connection with the administration of the Trust Fund or the Retirement Benefit Plan where it is established (a) that the responsibilities at issue were lawfully allocated or delegated to other Trustees or fiduciaries or (b) that in carrying out the responsibilities at issue the Trustee or other fiduciary reasonably relied upon the advice given by the administrative manager or by one or more of the professional persons employed by the Trustees.

No Trustee or other fiduciary shall be personally liable for a breach of fiduciary responsibilities if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

4.   *Judgments Against Trust Fund*

Any money judgment against the Trust Fund shall be enforceable only against the Trust Fund entity and shall not be enforceable against any Trustee or other person, unless liability against the Trustee or other person, in his individual capacity, is established in accordance with Section 409(a) of the Employee Retirement Income Security Act of 1974.

5.   *Participating Parties' Rights*

Except as specifically provided for in this Trust Agreement or in the Retirement Benefit Plan, no participating employer, employer association, labor organization, employee, or beneficiary shall have any right, title, or interest in or to the Trust Fund, or in or to the contributions, or in or to the benefits provided.

No participating employee shall be entitled to receive any part of the contributions in lieu of the benefits provided through the Retirement Benefit Plan, nor shall a participating employee who does not qualify for benefits, or his employer, have any claim to the con-

GCIU-Employer Retirement   Exhibit 1 to Complaint                     Page 52
Fund et. al. v. Peak Printing, Inc.

tributions which may have been paid on his behalf.

6.   *Cessation of Participation*

In the event a participating employer, employer association, or labor organization, or groups thereof, should cease their participation in the Trust Fund, there shall be no division or allocation of any of the monies or assets of the Trust Fund, except as may be specified in the Retirement Benefit Plan or required by law.

7.   *Protection of Trust Fund, Contributions, and Benefits*

No part of the Trust Fund (including the contributions) or the benefits payable under the Retirement Benefit Plan, shall be subject in any manner, by a participating employee or beneficiary, to anticipation, alienation, sale, transfer, assignment, encumbrance, or charge, and any such attempt shall be null and void except as may be required under Section 206(d) of the Act, as amended (a QDRO).

Further, no part of the Trust Fund (including the contributions), or the benefits payable under the Retirement Benefit Plan, shall be liable for the debts of a participating employee or beneficiary, nor be subject in any manner to garnishment, attachment, lien, charge, or any other legal process brought by any person against a participating employee or beneficiary, and any such attempt shall be null and void except as may be required under Section 206(d) of the Act, as amended (a QDRO).

8.   *Reliance upon Written Documents*

The Trustees may act upon any written letter, report, certificate, instrument, or other document submitted to them by any participating employer, employer association, labor organization, employee, or beneficiary, or by any other person, where such document appears to be genuine and to be signed by the proper person or persons and the Trustees shall be under no duty to make any investigation or inquiry as to any statement contained in any such document.

9.   *Agents of Trust Fund*

Unless authorized in a motion or resolution of the Trustees, no participating employer, employer association, or labor organization, nor any individuals employed thereby, shall have any authority to act or function for or on behalf of the Trust Fund or as agent thereof.

Likewise, unless authorized in a motion or resolution of the Trustees, no individual Trustee or other fiduciary shall have any authority to act or function for or on behalf of the Trust Fund or as an agent thereof.

— 35 —

GCIU-Employer Retirement            Exhibit 1 to Complaint               Page 53
Fund et. al. v. Peak Printing, Inc.

# ARTICLE XIII
# MISCELLANEOUS

1.  *Trust Fund Offices*

The Trust Fund shall maintain a principal office and suboffices, where necessary, in such locations as the Trustees may determine.

2.  *Applicable Laws and Regulations*

This Trust Agreement and the Retirement Benefit Plan shall be interpreted and administered in accordance with Section 302(c) of the Labor Management Relations Act of 1947, the Employee Retirement Income Security Act of 1974, the Internal Revenue Code, and the regulations pertinent thereto, and other applicable statutes and regulations, as such statutes and regulations presently exist or as they may hereafter be amended. Any omissions or oversights will be resolved in accordnce with the laws and regulations.

References herein to particular sections of the above mentioned statutes shall include any regulations pertinent to such sections and shall encompass any subsequent amendments to such sections or regulations.

3.  *Notices*

Any written notice permitted or required by this Trust Agreement shall be personally delivered to the person for whom it is intended or sent to such person, at his residence or business address, by first class mail. Any such notice may also be delivered by email, facsimile transmission, or other electronic means available as may be allowed by law.

4.  *Severability*

If any provision of this Trust Agreement, or of the Retirement Benefit Plan is held to be illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining portions of the Trust Agreement or the Retirement Benefit Plan.

5.  *Title — Words*

The titles of the various articles and sections of this Trust Agreement are inserted solely for convenience of reference and are not a part of, nor shall they be used to construe, any term or provision hereof. Whenever any words are used herein in the masculine gender they shall be construed as though they were used in the feminine gender, and words in singular form shall be construed as though they were used in the plural form, in all cases where they would so apply.

6.  *Information to be Furnished and Distributed*

To aid the Trustees in the administration of the Trust Fund, the participating employers, employer associations and labor organizations shall furnish the Trustees with such information as they may determine including (a) copies of collective bargaining agreements, (b) contribution rates, (c) the identity of employees covered by collective bargaining agreements, subscription agreements or participation agreements, and their social security numbers, (d) reports on compensated hours for all employees who have worked in the bargaining unit or as a nonbargaining unit employee whether or not a contribution has been paid, (e) reports on all hours or shifts or wages which constitute the basis of the contribution made to the Retirement Benefit Plan as provided in the collective bargaining agreement, subscription agreement or participation agreement, and (f) reports on actual contributions owed broken down by each employee.

GCIU-Employer Retirement Exhibit 1 to Complaint                Page 54
Fund et. al. v. Peak Printing, Inc.

# ARTICLE XIV
# AMENDMENTS AND TERMINATION

1.  *Amendments*

This Trust Agreement may be amended by action of the Trustees, except that the Trustees shall make no amendment to Article III without the unanimous written consent of the Trustees and the remaining signatory parties (or their successors).

In the event that the Trustees should propose an amendment to Article III, they shall deliver copies thereof to the remaining signatory parties (or their successors). If any signatory party (or successor thereto) fails, within thirty (30) days, to respond to a written request for consent to any such amendment, that signatory party will be deemed to have waived its right to act upon such amendment.

2.  *Termination*

This Trust Agreement may be terminated, at anytime, by unanimous action of the Trustees and the remaining signatory parties (or their successors).

3.  *Allocation upon Termination*

If the Plan is terminated, all assets remaining in the Trust Fund after the payment of all expenses incurred in terminating or administering the Plan will be allocated to the benefit of participating employees, retired employees, and surviving spouses, according to the following order of priority:

(a)   First, the remaining assets shall be allocated equally to (1) benefits in pay status three years prior to termination at the lowest benefit level under the plan during the five years prior to termination, and *(2)* benefits which would have been in pay status three years prior to termination had the employee been retired (and had his benefits commenced then, at the lowest benefit level under the plan during the five years prior to termination.)

(b)   Second, the assets remaining after satisfying the benefits described in section (a) above shall be allocated equally to all other benefits guaranteed under Title IV of the Employee Retirement Income Security Act of 1974, (irrespective of the limitations on the amount of monthly benefits and regardless of the number of plans in which the employee participated).

(c)   Third, the then remaining assets shall be allocated equally to all other non-forfeitable (vested) benefits under the plan.

(d)   Fourth, the then remaining assets shall be allocated equally to all other benefits under the plan.

If the assets of the Trust Fund applicable to any of the above categories (a) and (b) are insufficient to provide fully the amount of the benefits in each category, the benefits otherwise payable shall be reduced proportionately.

If the assets of the Trust Fund applicable to category (c) are insufficient to provide fully the amount of the benefits in that category, the assets shall be allocated to the benefits of individuals which are described in that category on the basis of benefits of individuals which would have been described in category (c) under the Plan as in effect at the beginning of the 5-year period ending on the date of plan termination.

— 37 —

If the assets available for allocation under the preceding paragraph are sufficient to satisfy in full the benefits described in that paragraph, then for purposes of that paragraph, benefits of individuals described in that paragraph shall be determined on the basis of the Plan as amended by the most recent Plan amendment effective during such 5-year period under which the assets available for allocation are sufficient to satisfy in full the benefits of individuals described in the preceding paragraph and any assets remaining shall be allocated under that paragraph on the basis of the Plan as amended by the next succeeding plan amendment effective during such period.

The amount allocated under any of the priority categories listed above with respect to any benefit shall be adjusted for any allocation of assets with respect to that benefit under a prior category.

The amount allocated to each benefit shall be used to provide monthly retirement benefit payments through continuance of the Trust Fund, or through a new Trust Fund, or for the purchase of insurance annuity contracts; provided that, if the Trustees find that it is not practical or desirable under the circumstances to do any of the foregoing, they may provide for some other means of disposing of the allocations of the Trust Fund, including making payments in cash to the persons for whom such allocations have been made.

In no event shall any of the remaining monies or assets be paid to or be recoverable by any participating employer, employer association, or labor organization.

— 38 —

GCIU-Employer Retirement Exhibit 1 to Complaint                    Page 56
Fund et. al. v. Peak Printing, Inc.

## SIGNATORY PARTIES *as of March 25, 1976*

| **Labor Organization Signatory Parties** | *Employer Signatory Parties* |
|---|---|

International Printing & Graphic Communications Union
By                                 Sol Fishko
Title                                President
Date                          March 25, 1976

Seattle Post-Intelligencer (Division of Hearst Publishing Company, Inc.)
By                                 Gerald W. Hedman
Title                      Director of Personnel & Labor Relations
Date                          March 25, 1976

Printing Specialties and Paper Products Unions, IP & GCU
By                                 Sol Fishko
Title                    President, IP & GCU
Date                          March 29, 1976

Seattle Times Company
By                                 Harold Fuhrman
Title          Vice President & General Mgr.
Date                          March 25, 1976

Seattle Web Pressman Local No. 26
 IP & GCU
By                           George G. Peterson
Title                  2nd V.P. #26 Seattle
Date                          March 25, 1976

Los Angeles Paper Box and Board Mills
By                           William H. Kewell, Jr.
Title                                President
Date                          March 25, 1976

Los Angeles Commercial Pressmen Local No. 78, IP & GCU
By                           Frank Calderone
Title                                President
Date                          March 25, 1976

Bay Area Paper Box Employers
By                           Edward H. Moore
Title                                Secretary
Date                            June 7, 1976

Printing Industries Association (Union Employers Section - Los Angeles)
By                                 Jerry Maras
Title                          Representative
Date                          March 25, 1976

## SIGNATORY PARTIES *as of July 1, 1984*

Graphic Communications International Union (successor to International Printing & Graphic Communications Union)

Graphic Communications Union, Local No. 404-M (successor to Los Angeles Commercial Pressman No. 78, IP & GCU)

Graphic Communications Union No. 777 (successor to Printing Specialties and Paper Products Union, IP & GCU)

Seattle Times Company

Bay Area Paper Box Employers

Seattle Newspaper Pressmen Local No. 26, GCIU

Printing Industries Association (Union Employers Section—Los Angeles)

— 39 —

GCIU-Employer Retirement Fund et. al. v. Peak Printing, Inc.                    Exhibit 1 to Complaint                    Page 57

**Note:** On September 9, 1988, the three remaining employer signatory parties, the Seattle Times, the Bay Area Paper Box Employers, and the Printing Industries Association (Union Employers Section) - Los Angeles, agreed, in writing, to irrevocably and unconditionally transfer and assign to the incumbent employer trustees and their successors all of their rights and powers under this Trust Agreement and to forever resign their positions as employer signatory parties.

### SIGNATORY PARTIES *as of September 1, 1990*

Graphic Communications International Union (successor to International Printing & Graphic Communications Union)

Graphic Communications Union, Local No. 767-M (successor to Seattle Newspaper Pressmen Local No. 26, GCIU)

Graphic Communications Union, Local No. 388-M (successor to Graphic Communications Union, No. 777)

Graphic Communications Union, Local No. 404-M (successor to Los Angeles Commercial Pressmen No. 78, IP & GCU)

### SIGNATORY PARTIES *as of September 1, 1999*

Graphic Communications International Union (successor to International Printing & Graphic Communications Union)

Graphic Communications Union, Local No. 767-M (successor to Seattle Newspaper Pressmen Local No. 26, GCIU)

Graphic Communications Union, Local No. 388-M (successor to Graphic Communications Union, No. 777)

Graphic Communications Union, Local No. 404-M (successor to Los Angeles Commercial Pressmen No, 78, IP & GCU)

### SIGNATORY PARTIES *as of September 1, 2012*

Graphic Communications International Union (successor to International Printing & Graphic Communications Union)

Graphic Communications Union, Local No. 767-M (successor to Seattle Newspaper Pressmen Local No. 26, GCIU)

Graphic Communications Union, Local No. 388-M (successor to Graphic Communications Union, No. 777)

Graphic Communications Union, Local No. 404-M (successor to Los Angeles Commercial Pressmen No, 78, IP & GCU)

## LIST OF TRUSTEES *as of January 1, 1976*

**Employer Trustees**
Harold Fuhrman
Charles Woessner
Joseph Conley
Jerry Maras
Frank Hurlburt
William Kewell, Jr.

**Labor Organization Trustees**
Sol Fishko
Robert O'Neil
Jack McCormick
Don McCaughan
George Peterson
Frank Calderone
Wade Moore

**Alternate Employer Trustees**
Gerald Hedman
Walter Taylor
O.H. Rieth
Lad Sabo

John Millan
Floyd F. Lisinski

**Alternate Labor Organization Trustees**
George Barnett
George Gates
Cy Quinn

## LIST OF TRUSTEES *as of September 1, 1990*

**Employer Trustees**
Joseph Conley
Harold Fuhrman
Jerry Maras
O.H. Rieth
Donald Scheiber
David Stanger

**Labor Organization Trustees**
James Western
George Barnett
Wade Moore
Floyd Lisinski
William Roberts
James Norton
Gary Dunmire
Robert Bartlett
William Clark

## LIST OF TRUSTEES *as of September 1, 1999*

**Employer Trustees**
Joseph Conley
Harold Fuhrman
Hugh Gaylord
Jerry Maras
Thomas E. Phillips
Nate Accardi
Jim Janiga

**Labor Organization Trustees**
Frank P. Young
William Clark
John A. Giannone
Stephen E. Northup
James J. Norton
Edward A. Treacy
John D. Bachler
**Alternate Labor Organization Trustees**
George Osgood
Ryan Sherard
Paul E. Golden

— 41 —

# Notes

GCIU-Employer Retirement Exhibit 1 to Complaint          Page 60
Fund et. al. v. Peak Printing, Inc.

GCIU-Employer Retirement Fund

AMENDMENT NO. 1
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)

This is to certify that the Board of Trustees of the GCIU-Employer Retirement Fund, at a meeting on August 20, 2013, did adopt the following amendment to Article IV, Section 2, "Constitution of a Quorum," of the Trust Agreement governing the GCIU-Employer Retirement Fund. This Amendment is effective August 20, 2013.

Article IV, "Trust Fund Administration," Section 2, "Constitution of a Quorum," is hereby deleted and replaced with the following:

"2.  Constitution of a Quorum

To constitute a quorum at any meeting of the Trustees there must be present at least 50% of the Employer Trustees, or duly designated alternates, and 50% of the Labor Organization Trustees, or duly designated alternates."

Dated this 20th day of August 2013.

_____                _____
          Chairman                              Secretary

GCIU-Employer Retirement Fund

AMENDMENT NO. 2
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)

This is to certify that the Board of Trustees of the GCIU-Employer Retirement Fund, at a meeting on February 18, 2015, did adopt the following amendment to Article VI, Section 9, "Specifically Permitted Investments," of the Trust Agreement governing the GCIU-Employer Retirement Fund.  This Amendment is effective February 18, 2015.

Article VI, "Trustee Responsibilities," Section 9, "Specifically Permitted Investments," is hereby revised to read as follows:

"9.   Specifically Permitted Investments

* * *

Finally, to the extent permitted by law, the monies of the Trust Fund may also be invested in certain alternative investments and investment vehicles, including, but not limited to, mutual funds, REITS, private equity funds, infrastructure funds, private debt funds, and instruments comprising risk parity and real return strategies, subject to the investment criteria set out in Section 8 above."

Dated this ___10th___ day of April 2015.


_____           _____
       Chairman                            Secretary

GCIU-Employer Retirement Fund

AMENDMENT NO. 3
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)

This is to certify that the Board of Trustees of the GCIU-Employer Retirement Fund ("Fund"), at a meeting on November 17, 2015, did adopt the following Amendment to Article VI, "Trustee Responsibilities," Section 20, "Documents to be Examined or Furnished," of the Trust Agreement governing the GCIU-Employer Retirement Fund for compliance with the Multiemployer Pension Reform Act of 2014. This Amendment is effective January 1, 2015.

Article VI, "Trustee Responsibilities," Section 20, "Documents to be Examined or Furnished," is amended to delete the third paragraph in its entirety and replace it with the following:

**"20. Documents to Be Examined or Furnished**

\* \* \*

The Trustees shall also, upon written request by a participating employee or beneficiary, labor organization, or participating employer furnish to the participating employee or beneficiary, labor organization, or participating employer a copy of a) the current plan document (including any amendments thereto), b) the latest summary plan description of the plan, c) the current trust agreement (including any amendments thereto, d) the applicable collective bargaining agreement and/or participation agreement for the current Plan Year or any of the five immediately preceding Plan Years, e) the annual report for any Plan Year, f) the Trust Fund funding notice for any Plan Year, g) any periodic actuarial report (including any sensitivity testing) received by the Trust Fund for any Plan Year which has been in the Trust Fund's possession for at least 30 days, h) any

1

quarterly, semi-annual, or annual financial report prepared for the Trust Fund by any Fund Investment Manager or advisor or other fiduciary which has been in the Trust Fund's possession for at least 30 days, i) audited financial statements for the Trust Fund for any Plan Year, j) any application filed with the Secretary of the Treasury requesting an extension under Section 304(d) of the Act or Section 431(d) of the Internal Revenue Code of 1986 and the determination of such Secretary pursuant to such application, and k) in the case where the Trust Fund was in critical or endangered status under Section 305 of the Act for a Plan Year, the latest funding improvement or rehabilitation plan, and the contribution schedules applicable with respect to such funding improvement or rehabilitation plan (other than a contribution schedule applicable to a specific participating employer, if any), as required by Section 101(k) of the Act subject to any limitations imposed by Section 101(k) of the Act with regard to individually identifiable information and proprietary information.

In accordance with Section 101(k) of the Act, such copies shall be furnished within 30 days of the request. In no case shall a participating employee or beneficiary, labor organization, or participating employer be entitled to receive more than one copy of any document in the paragraph above during any one 12-month period, or, in the case of any document described in items (e), (f), (g), (h), or (i) of the paragraph above, a copy of any document that as of the date on which the request is received by the Trust Fund, has been in the Trust Fund's possession for 6 years or more. The Trustees may impose a reasonable charge to cover copies, mailing, and other costs of furnishing copies of the information as may be allowed by regulations of the Secretary of Labor."

* * *

Executed this 17th day of November 2015.

_____          _____
Chairman                         Secretary

2

```
                                                      FINAL
                                                      11/13/18
```

GCIU-Employer Retirement Fund

AMENDMENT NO. 4
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)


This is to certify that the current Labor Organization Trustees of the GCIU-Employer Retirement Fund did adopt the following Amendments to Article II, "Definitions," Section 12, "Signatory parties"; Article III, "The Trustees," Section 8, "Appointment of Successor Labor Organization Trustees"; Article III, "The Trustees," Section 12, "Termination of Appointment by Appointing Entity"; and Article XIV, "Amendments and Termination," Section 1, "Amendments," and Section 2, "Termination," of the Trust Agreement governing the GCIU-Employer Retirement Fund. This Amendment is effective November 13, 2018.

1. Under Article II, "Definitions," Section 12, "Signatory parties," is hereby deleted in its entirety and the remaining Sections renumbered accordingly.

2. Under Article III, "The Trustees," Section 8, "Appointment of Successor Labor Organization Trustees," is deleted in its entirety and replaced with the following:

"Article III
THE TRUSTEES

* * *

8. Appointment of Successor Labor Organization Trustees

In the event of the termination of appointment, resignation, or death of a Labor Organization Trustee, a successor Labor Organization Trustee shall be nominated by the President of the GCC-Conference of the IBT (or his named representative) and then approved/appointed by a majority of the current Labor Organization Trustees at the time of the nomination(s).

1

GCIU-Employer Retirement          Exhibit 1 to Complaint          Page 67
Fund et. al. v. Peak Printing, Inc.

The GCC-Conference of the IBT shall be entitled to one Labor Organization Trustee. In addition, only one Labor Organization Trustee shall be permitted from the same local union and/or its affiliated District Council at any time."

3. Under Article III, "The Trustees," Section 12, "Termination of Appointment by Appointing Entity," the second and third paragraphs are deleted in their entirety and replaced with the following:

"Article III
THE TRUSTEES

\* \* \*

12. Termination of Appointment by Appointing Entity

\* \* \*

The appointment of a Labor Organization Trustee may be terminated, at any time, by a majority action of the current Labor Organization Trustees for the reasons set forth in Article III, Sections 13, 14, and 15.

The termination of a Trustee's appointment shall be effective upon the termination date specified in a written notice of termination, executed by the group of appropriate Employer Trustees or Labor Organization Trustees, as applicable. Any such notice shall be addressed to the Trustees and shall be mailed to the Trust Fund's Administrative Office."

4. Under Article XIV, "Amendments and Termination," Section 1, "Amendments," is hereby deleted in its entirety and replaced with the following:

"Article XIV
AMENDMENTS AND TERMINATION

1. Amendments

This Trust Agreement may be amended at any time by action of the Trustees."

GCIU-Employer Retirement
Fund et. al. v. Peak Printing, Inc.

Exhibit 1 to Complaint

5.   Under Article XIV, "Amendments and Termination," Section 2, "Termination," is hereby deleted in its entirety and replaced with the following:

"Article XIV
AMENDMENTS AND TERMINATION

* * *

2.   Termination

    This Trust Agreement may be terminated, at any time, by unanimous action of the Trustees."

* * *

6.   All other ancillary references to the "remaining Signatory parties" and/or "Signatory party(ies) are hereby deleted and an appropriate notation will be reflected on page 40 of this Agreement.


    Executed this 13th day of November 2018 by the Labor Organization Trustees.


_____
Ralph M. Meers
as Alternate Trustee for
Edward A. Treacy
Labor Organization Trustee

_____
John D. Bachler
Labor Organization Trustee


_____
George Tedeschi
Labor Organization Trustee

3

GCIU-Employer Retirement          Exhibit 1 to Complaint          Page 69
Fund et. al. v. Peak Printing, Inc.

# EXHIBIT 2

GCIU-Employer Retirement
Fund et. al. v. Peak Printing, Inc.

Exhibit 2 to Complaint

Page 70

# AGREEMENT

Between

# ALLEN PRINTING, INC.
Formerly
# (KARTARIK GRAPHIC & PRINTING)

And

# GRAPHIC COMMUNICATIONS CONFERENCE of the INTERNATIONAL BROTHERHOOD of TEAMSTERS UPPER MIDWEST LOCAL 1-M

Effective March 31, 2010—March 31, 2013

# TABLE OF CONTENTS

Page

ARTICLE 1 - TERM OF AGREEMENT ...................................................................... 1
ARTICLE 2 - COVERAGE OF AGREEMENT ............................................................ 1
ARTICLE 3 - WORK WEEK HOURS ......................................................................... 1
ARTICLE 4 - HOLIDAYS ............................................................................................. 2
ARTICLE 5 - VACATION SCHEDULE ....................................................................... 2
ARTICLE 6 - WAGES ................................................................................................... 3
ARTICLE 7 - UNION LABEL ....................................................................................... 3
ARTICLE 8 - PENSION ................................................................................................ 3
ARTICLE 9 - MISCELLANEOUS ............................................................................... 4
ARTICLE 10- CONTINUITY OF AGREEMENT ........................................................ 5

# AGREEMENT

Between

# ALLEN PRINTING, INC.
Formerly
## (KARTARIK GRAPHIC & PRINTING)

And

## GRAPHIC COMMUNICATIONS CONFERENCE of the INTERNATIONAL BROTHERHOOD of TEAMSTERS UPPER MIDWEST LOCAL 1-M

Effective March 31, 2007—March 31, 2010

This Contract is made and entered into by and between Allen Printing Inc. (Formerly Kartarik Graphics) St. Paul, Minnesota, hereinafter called the "Employer" and GCC/IBT Upper Midwest Local 1-M, a subordinate union chartered by and under the jurisdiction of the Graphic Communications Conference of the International Brotherhood of Teamsters whose headquarters are at Washington, DC, by the officers duly authorized to act in its behalf, hereinafter called the "Union."

## ARTICLE 1 - TERM OF AGREEMENT

Terms and Provisions of this contract shall be effective from March 31, 2010 through midnight March 31, 2013. This contract shall renew itself automatically each expiration date for an additional one year (1-year) term, provided neither party to this agreement serves written notice on the other party of desire to change or modify this agreement. The time for such notification shall be no later than sixty (60) days prior to the expiration date of this contract.

## ARTICLE 2 - COVERAGE OF AGREEMENT

Section 1. Employees covered by this agreement shall be those in the following departments: Letterpress, Bindery, and Offset including Camera Operation, all Darkroom Work, Stripping, Opaquing, Platemaking, Layout and PasteUp.

Section 2. All employees covered by this agreement shall make application for membership in the Union after thirty (30) days from commencement of employment and as a condition of employment shall maintain their membership in the Union. To comply with the provisions of this section, union membership is required only to the extent that employees must pay the Union's periodic dues and initiation fees.

## ARTICLE 3 - WORK WEEK HOURS

Section 1. A week's work, both days and nights, shall consist of minimum of forty (40) hours of consecutive eight (8) hour days.

Allen Printing Inc.
GCIU Employee Retirement
03/31/10 - 03/31/2013
Fund et. al. v. Peak Printing, Inc.

1

Exhibit 2 to Complaint

Page 73

Section 2.  Hours of Work:  "Days work" shall be defined as any eight (8) hours of labor, the majority of which has been worked between 6:00 a.m. and 6:00 p.m.

Section 3.  Two (2) fifteen minute (15-minute) breaks will occur during every eight hour (8-hour) shift and one fifteen minute (15-minute) break every four (4) hours worked thereafter.  They are to be considered time worked within the shift.  Time placement of these breaks need not interfere with production.

Section 4.  Any employee who is or becomes handicapped by reason of advanced age, or physical disability, may be retained as an employee in the same shop at a rate of wages mutually agreed upon between the employee affected and a representative of the Union and the Employer.

Section 5.  All work in excess of forty (40) hours per week shall be at the rate of one and one-half (1½) times the regular rate.

Section 6.  All overtime is mandatory when notified before closing of the previous day.  Mandatory overtime shall not exceed twelve (12) hours per day.

## ARTICLE 4 - HOLIDAYS

Section 1.  Day or night work done on Sunday shall be paid for at the rate of double time.  Day or night work done on New Year's Day, Fourth of July, Memorial Day, Labor Day, Thanksgiving Day, Christmas Day, or days celebrated as such, shall be paid for at the rate of two and one-half (2½) times the straight time hourly rate.

Section 2.  When no work is performed on the above-enumerated six (6) holidays or days celebrated as such, employees shall receive eight (8) hours pay at their regular straight time hourly rate.  The Employer shall have the privilege of working employees on such holidays if necessary, in which payment shall be made in accordance with the provisions of Section 1.

Section 3.  A compensating day shall be granted each employee whose day off or vacation day falls on one of the six named holidays.  When possible the employee's preference or compensating day will be considered.  If a compensating day cannot be granted, it shall be paid for.

Section 4.  An employee must have been on the payroll thirty (30) consecutive calendar days or more prior to and following the holiday.  Absence from either or both such shifts, by mutual agreement, shall not disqualify them from receiving holiday pay.

## ARTICLE 5 - VACATION SCHEDULE

Section 1.  All employees covered by this contract who have been continuously employed by the Employer shall be entitled to one week vacation at regular pay on the first anniversary of their employment, to be accumulated at the rate of one (1) day for every two (2) months worked to a maximum of five (5) days.

Section 2.  All employees covered by this contract who have been continuously employed by the Employer shall be entitled to two weeks vacation at the regular pay on the second anniversary of the employment.

Section 3.  All employees covered by this contract who have been continuously employed by the

Allen Printing Inc.
GCIU Employee Retirement
Fund et. al. v. Peak Printing, Inc.
03/31/10 - 03/31/2013
2
Exhibit 2 to Complaint
Page 74

Employer shall be entitled to three (3) weeks vacation at the regular pay on the sixth (6th) anniversary of their employment.

Section 4.   All employees covered by this contract who have been continuously employed by the Employer shall be entitled to four (4) weeks vacation at the regular pay on the tenth (10th) anniversary of their employment.

Section 5.  Vacation schedules shall be arranged between the employee and the Foreperson.  Insofar as efficiency of plant operation will permit, employee's choice of dates shall be given consideration.  Seniority shall determine first preference of dates.

Section 6.  Vacations may be scheduled anytime during the year with the Foreperson's approval.  Once a vacation is scheduled and agreed upon by the Foreperson, it shall not be changed without the consent of the employee concerned.  In case of termination, all vacation earned but not taken shall be due the employee.

## ARTICLE 6 - WAGES

Section 1.  Minimum hourly wage rates for competent journey operators effective as of dates specified shall be as follows:

|          | 03/31/11 | 03/31/12 | 03/31/13 |
|----------|----------|----------|----------|
| Prepress | $21.33   | $21.58   | $21.83   |
| 2/C Ryobi| $23.10   | $23.35   | $23.60   |
| Bindery  | $16.80   | $17.05   | $17.30   |

## ARTICLE 7 - UNION LABEL

In consideration of this contract, the Union agrees the Employer shall be entitled to the use of the individual label of the Graphic Communications Conference of the International Brotherhood of Teamsters. The label number will remain the same as the former Kartarik Graphics.

## ARTICLE 8 - PENSION

Section 1.  The Employer and the Union hereby accept, ratify and become bound by the terms of that certain Trust Agreement and Retirement benefit plan, dated October 1, 1955, as amended, establishing the GCC/IBT Employer Retirement Fund, the same as though they were signatory parties thereto.

Section 2.  The Employer shall contribute monthly to the GCC/IBT. Employer Retirement Fund the sum of $6.50 per straight time shifts pay earned for each employee covered by this contract. (All employees working twenty (20) hours or more per week shall qualify). Said contributions shall be made in the manner prescribed by the Retirement Fund Committee.

Section 3.  The Employer agrees to provide the local Union with a copy of the monthly pension report containing names of employees and shifts worked.

Allen Printing Inc.
GCIU Employer Retirement
03/31/10 - 03/31/2013
Fund et. al. v. Peak Printing, Inc.
3
Exhibit 2 to Complaint
Page 75

# ARTICLE 9 - MISCELLANEOUS

Section 1.  It is mutually agreed that employees, when leaving the employ of the Employer shall give two (2) full working weeks' notice; and it is further agreed that the Employer shall give to employees two (2) full weeks' notice of intent to discharge any employee covered by this agreement; however, it is understood that this provision shall not apply to temporary help nor to temporary layoffs of thirty (30) days or less.

Section 2.

(a)    A priority list shall be drawn up as early as possible and approved by both parties of this agreement and such list shall be on display or copies of list must be available at all times for reference.

(b)    In the event of a reduction of the size of the working force, the last employed shall be the first to be laid off.

(c)    In the event of a subsequent increase in the size of the working force, the employees shall be re-employed in the reverse order.

(d)    In regard to layoffs and hiring, ability to perform the work shall be considered.

Section 3.  There shall be no strikes or interference with the production, directly or indirectly, for any reason whatsoever during the term of this agreement.

Section 4.  The employees shall be entitled to the necessary conveniences for the proper performance of their work.

Section 5.  Ninety (90) day probation.

Section 6. Bereavement Pay:

(a)    In the event of the death of a member of a (non-probationary) employee's immediate family, he/she shall be entitled to absent him/herself from work for three (3) successive calendar days next succeeding the day of death. He/She will e paid for that partition of his/her regular week's work which falls within the above three (3) day period, if he/she were under the terms of this Agreement, scheduled to work. All bereavement pay shall be at straight time rates. In order to qualify for payment under this provision, the employee must actually attend the funeral.

(b)    "Immediate family" shall mean the employee's spouse, children, father, mother, brother, sister, father-in-law, and mother-in-law.

(c)    In the event of the death of a grandparent or grandchild, the employee will be entitled to one (1) day's paid bereavement to attend the funeral.

Allen Printing Inc.
GCIU Employer Retirement   03/31/10 - 03/31/2013   Exhibit 2 to Complaint   Page 76
Fund et. al. v. Peak Printing, Inc.

4

## ARTICLE 10 – CONTINUITY of AGREEMENT

The employer agrees that all obligations under this contract and performance thereof, by the buyer, lessee, transferee, or assignee, become a condition of sale transfer, lease or assignment.

IN WITNESS WHEREOF, the parties have set their hands and seal this ⟨21⟩ day of July 2010.

### ALLEN PRINTING, INC.

By: _____

### GRAPHIC COMMUNICATIONS CONFERENCE of the INTERNATIONAL BROTHERHOOD of TEAMSTERS UPPER MIDWEST LOCAL 1-M

By: _____
George Osgood
Its: President

By: _____
Robert Dean Stanton
Its: Secretary-Treasurer

### GRAPHIC COMMUNICATIONS CONFERENCE of the INTERNATIONAL BROTHERHOOD of TEAMSTERS

By: _____
George Tedeschi
Its: President

The approval by the Conference President of this Contract does not, under any circumstances, make the International a party to this Contract nor responsible for its observance or for any breach thereof.

Allen Printing Inc.
GCIU Employer Agreement
Fund et. al. v. Peak Printing, Inc.
03/31/10 – 03/31/2013
5
Exhibit 2 to Complaint
Page 77

# EXHIBIT 3

 **GCIU - Employer Retirement Fund**

*Newspaper, Commercial Printing, and Printing Specialties & Paper Products Industries*

2323 Eastlake Ave E Seattle WA 98102 • (800) 322-1489 • Formerly IP&GCU-Employer Retirement Fund

December 6, 2018

Allen Printing, Inc.
Mr. Anthony Schlosser, President
1016 Payne Ave
St. Paul, MN  55130

<u>**Via Registered Mail**</u>

Re:   <u>Notice of 2017 Complete Withdrawal Liability and Demand for Payment</u>
Allen Printing, Inc. (9980)

Dear Mr. Schlosser:

We understand that Allen Printing, Inc. has withdrawn from participation in the Plan, thus effectuating a complete withdrawal from the GCIU-Employer Retirement Fund ("Fund") as defined by Section 4203 of the Employee Retirement Income Security Act ("ERISA"). Please allow this letter to serve as a formal notice of withdrawal liability and demand for payment as required by ERISA Section 4219.

In accordance with ERISA and the Fund's Withdrawal Liability Procedures, the Fund's actuaries determined that the withdrawal liability attributable to Allen Printing, Inc. is $722,679. Detail regarding the calculation is set forth on Exhibits 1 and 2 enclosed with this letter. A payment schedule as required by ERISA Section 4219(c) is set forth on Exhibit 1 enclosed with this letter. Demand is hereby made that Allen Printing, Inc. make payments in accordance with the enclosed schedule.

You may either make payment in accordance with the enclosed monthly payment schedule or in a lump sum. Exhibit 1 shows the calculation of the monthly payment amount as well as the starting and ending payment dates.

You may also choose to make a lump sum, present value payment. The present value of 240 monthly payments of $299.46 is $57,594 (rather than the full assessment of $722,679). Please be advised that Allen Printing, Inc. can elect to pay the present value of the withdrawal liability assessment by remitting payment in the amount of $57,594 within 60 days from the date of this letter.

GCIU-Employer Retirement
Fund et. al. v. Peak Printing, Inc.

Exhibit 3 to Complaint

Page 79

Allen Printing, Inc.
Mr. Anthony Schlosser, President
December 6, 2018
Page 2

If you choose to make monthly payments, you may still satisfy your obligation with a lump sum payment at a future date. The present value will be calculated based on remaining payments at that time.

Please be advised that by accepting payment in the form of a lump sum, the Fund is in no way waiving its rights and obligations under ERISA Sections 4041A and 4219(c)(1) to reassess withdrawal liability to Allen Printing, Inc. in the event of a "mass withdrawal."

Any request for review or objection to the assessment pursuant to ERISA Section 4219(b)(2), must be made within 90 days of receipt of this notice and demand. Please also note the time restrictions imposed by ERISA Section 4221 regarding arbitration apply to this withdrawal liability assessment and demand. This letter is intended as notice of withdrawal liability and demand for payment to all commonly controlled entities as provided by ERISA Section 4001(b)(1) and the regulations promulgated thereunder.

**Finally, please note that this notice of assessment is based on the Fund's understanding that Allen Printing, Inc. does not have any other contributing affiliates to the Plan. If the Fund's understanding is not correct, you must notify the Fund immediately with the names and addresses of these other contributing employer groups so that the Fund can review the information for a possible correction to this assessment.**

Should you have any questions or comments, please do not hesitate to contact us.

Sincerely,

*Douglas D. Wisman*

Douglas D. Wisman
Compliance Manager for Administrator

Enclosures
cc:    GCC/IBT Local 1-M

Exhibit 1

## GCIU - Employer Retirement Fund
### Calculation Details for 2017 Complete Withdrawal Liability

Employer Name: **ALLEN PRINTING INC**

### Determination of Complete Withdrawal Liability

| Year ended December 31 (1) | Unamortized Balance of Withdrawal Liability Pools | | Contributions During 5-Year Period Ending On Date Pool Established | | Liability Allocated [(5) / (4)] x [(2) + (3)] (6) |
|---|---|---|---|---|---|
| | Basic Pools (2) | Reallocated Pools (3) | Total Plan Net Contributions (4) | Employer Contributions (5) | |
| 2006 | $ 248,963,728 | $          - | $ 108,033,896 | $      10,326 | $      23,796 |
| 2007 | 32,840,435 | 369,695 | 104,568,358 | 14,265 | 4,530 |
| 2008 | 287,472,769 | 3,655,143 | 100,271,099 | 16,040 | 46,571 |
| 2009 | (61,402,914) | 19,650,821 | 90,698,345 | 14,797 | (6,812) |
| 2010 | 41,357,233 | 27,390,043 | 76,123,749 | 13,428 | 12,127 |
| 2011 | 519,201,238 | 79,433,212 | 56,658,966 | 11,881 | 125,530 |
| 2012 | 323,535,573 | 65,396,174 | 52,524,327 | 10,379 | 76,854 |
| 2013 | (12,320,101) | 104,178,794 | 43,119,997 | 11,041 | 23,521 |
| 2014 | 58,498,231 | 125,474,678 | 39,454,020 | 11,554 | 53,876 |
| 2015 | 423,798,392 | 107,111,506 | 35,085,438 | 11,993 | 181,477 |
| 2016 | 249,885,506 | 204,791,083 | 34,300,663 | 12,025 | 159,399 |
| Totals | $ 2,111,830,090 | $ 737,451,149 | | | $     700,869 |

Allocation of liability associated with Adjustable Benefits
| | | | | | |
|---|---|---|---|---|---|
| 2016 | 62,210,530 | | 34,300,663 | 12,025 | 21,810 |

| | | | |
|---|---|---|---|
| A | Gross liability: Sum of Column 6 | $ | 722,679 |
| B | De minimis threshold | | 50,000 |
| C | De minimis reduction: $100,000 + (B) - (A), but not greater than (B) nor less than zero | | - |
| D | Net Withdrawal Liability: (A) - (C), but not less than zero | $ | 722,679 |

### Determination of Payment Schedule
| | | | |
|---|---|---|---|
| E | Highest Contribution Rate  (during years 2008 - 2017) | | 8.13 |
| F | Highest Consecutive 3 Year Average Contribution Base Units  (during years 2007 - 2016) | | 442 |
| G | Annual Withdrawal Liability Payment: (E) x (F) | $ | 3,593.46 |
| H | Monthly Payments Starting January 1, 2018 | $ | 299.46 |
| I | Number of Years for Full Annual Payment in Amortization of Withdrawal Liability Assessment | | 20 |
| J | Number of Full Monthly Payments in Final Year | | 0 |
| K | Final Payment Date | | 12/01/2037 |
| L | Final Payment Amount | $ | 299.46 |

Exhibit 3

**GCIU - Employer Retirement Fund**
**Withdrawal Liability Calculation**
**Backup Data**

**ALLEN PRINTING INC**

| | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Contributions (Data Provided) 9680   ALLEN PRINTING INC | - | - | 2,184.00 | 2,357.50 | 2,795.00 | 3,035.50 | 1,775.00 | 1,925.00 | 1,998.75 | 2,242.50 | 2,437.50 | 2,437.50 | 2,437.50 | 2,437.50 | 2,275.00 | - |
| Total Five Year Totals | - | - | 2,184.00 | 2,357.50 | 2,795.00 | 3,035.50 10,329.00 | 1,775.00 14,365.00 | 1,925.00 10,540.00 | 1,998.75 14,797.00 | 2,242.50 13,498.00 | 2,437.50 11,881.00 | 2,437.50 10,578.00 | 2,437.50 11,944.00 | 2,437.50 11,964.00 | 2,275.00 12,025.00 | - 9,549.00 |
| Shift Rate (Data Provided) 9680   ALLEN PRINTING INC | - | - | 4.56 | 4.45 | 5.25 | 5.42 | 5.92 | 6.42 | 6.66 | 7.46 | 8.13 | 8.13 | 8.13 | 8.13 | 8.13 | 8.13 |
| Total (calculated) Highest Rate | - | - | 4.56 | 4.45 | 5.25 5.92 | 5.42 | 5.92 5.92 | 6.42 6.42 | 6.66 6.66 | 7.46 7.46 | 8.13 8.13 | 8.13 8.13 | 8.13 8.13 | 8.13 8.73 | 8.13 8.13 | 8.13 |
| Contribution Base Units (Shifts, = Contributions/Shift Rate) 9680   ALLEN PRINTING INC | | | 779.47 | 755.04 | 756.00 | 725.85 | 295.82 | 299.84 | 300.11 | 288.81 | 299.87 | 299.82 | 300.82 | 299.82 | 279.82 | - |
| Total Three Year Average Five Year Average | - | - | 779.47 | 755.04 | 756.00 | 725.85 | 295.82 | 295.84 442.00 584.50 | 300.11 300.00 477.00 | 288.81 300.00 385.00 | 299.87 300.00 300.00 | 299.82 300.00 300.00 | 300.82 300.00 300.00 | 299.82 300.00 300.00 | 279.82 293.00 296.00 | - |
| Hours (Data Provided) 9680   ALLEN PRINTING INC | - | - | 5,308.00 | 6,029.00 | 6,064.00 | 5,722.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,100.00 | - |
| Total | - | - | 5,308.00 | 6,029.00 | 6,064.00 | 5,722.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,100.00 | - |

GCIU2017-WL-Allen Printing.xlsx

11/26/2018

GCIU-Employer Retirement
Fund et. al. v. Peak Printing, Inc.

Exhibit 3 to Complaint

Page 82

# EXHIBIT 4

GCIU-Employer Retirement
Fund et. al. v. Peak Printing, Inc.

Exhibit 4 to Complaint

Page 83



# GCIU - Employer Retirement Fund

### *Newspaper, Commercial Printing, and Printing Specialties & Paper Products Industries*

2323 Eastlake Ave E Seattle WA 98102 • (800) 322-1489 • Formerly IP&GCU-Employer Retirement Fund

February 25, 2019

Mr. Anthony Schlosser, President
Allen Printing, Inc.
1016 Payne Ave.
St. Paul, MN  55130

<u>VIA CERTIFIED MAIL</u>

Re:    <u>Notice of Failure to Pay Withdrawal Liability and Demand for Cure</u>
         2017 Complete Withdrawal Liability - $722,679
         **Allen Printing, Inc. (9980)**

Dear Mr. Schlosser:

Please allow this letter to serve as notice of failure to pay withdrawal liability and demand for cure in accordance with Section 4219(c)(5) of the Employee Retirement Income Security Act ("ERISA").

By letter dated December 6, 2018, the GCIU-Employer Retirement Fund ("Fund") provided a formal notice of withdrawal liability and demand for payment. The letter enclosed payment schedules. According to our records, Allen Printing, Inc. has not remitted its first withdrawal liability payments to the Plan.

Please be advised if payments in accordance with the schedules are not made in full within 60 days of your receipt of this letter, Allen Printing, Inc. will be in default of its withdrawal liability assessment. Should that occur, the entire assessment and interest shall be immediately due.

This notice and demand for cure is intended as notice and demand to Allen Printing, Inc. and all commonly controlled entities as provided by ERISA Section 4001(b)(1) and the regulations promulgated thereunder.

Thank you for your attention to this issue. Should you have any questions or comments, please do not hesitate to contact me.

Sincerely,

*Douglas D. Wisman*

Douglas D. Wisman
Compliance Manager for Administrator

# EXHIBIT 5

JS-6

1

2

3

4

5

6

7

8

9

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11   GCIU-EMPLOYER RETIREMENT          )   CASE NO. CV 19-8505-GW-KESx
     FUND AND BOARD OF TRUSTEES        )
12   OF THE GCIU-EMPLOYER             )   **JUDGMENT**
     RETIREMENT FUND,                  )
13                                     )
            Plaintiffs,                )
14                                     )
         v.                            )
15                                     )
     ALLEN PRINTING, INC., a Minnesota )
16   Corporation,                      )
                                       )
17          Defendant.                 )
                                       )
18                                     )
                                       )
19                                     )

20

21

22

23

24

25

26

27

28

**JUDGMENT IS HEREBY ENTERED** in favor of Plaintiffs against Allen Printing, Inc., in accordance with the terms of the Court's ruling granting Plaintiffs' motion for default judgment (ECF No. 22).

The Court **AWARDS** Plaintiffs: (1) $722,679 in withdrawal liability. (2) $42,914.30 in prejudgment interest on the liability, (3) $18,911.87 in attorneys' fees, and (4) $1,720.50 in costs.

///

///

The Court also **DISMISSES** Plaintiffs' second cause of action for payroll audit documents.

Dated: March 24, 2020

_____

HON. GEORGE H. WU, U.S. District Judge

GCIU-Employer Retirement Fund et. al. v. Peak Printing, Inc.

Exhibit 5 to Complaint
[PROPOSED] JUDGMENT

2

Page 87